**UNITED STATES of America,
Plaintiff/Appellee,**

v.

**Jesse RAMIREZ, Defendant/Appellant.**

**No. 84–5371.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 10, 1985.

Decided Sept. 10, 1985.

---

David Nimmer, Jeffrey Modisett, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Lori Huff-Dellman, Donald Etra, Sidley & Austin, Los Angeles, Cal., for defendant-appellant.

Before ANDERSON, HUG, and TANG, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

Jesse Ramirez was arrested and charged with violating 18 U.S.C. Appendix I § 1202(a)(5), alien in possession of a firearm, and with violating 18 U.S.C. § 111, assaulting a federal officer. His motion to suppress evidence, the handgun, was denied by the district court. Subsequent to that denial, Ramirez entered a conditional plea of guilty of being an alien in possession of a firearm. The other count of the indictment was dropped with the approval of the district court. We find that the district court's denial of Ramirez's motion to suppress the evidence of the handgun was not improper and therefore affirm the decision of the district court.

FACTS

The FBI secured arrest warrants from a federal judge in Florida for the arrests of Julita Nina DeParias and Julio E. DeParias in connection with a kidnapping and murder that had taken place there. This information was transmitted via teletype to other regional field offices of the FBI. In Los Angeles, Special Agent (SA) Gregory Allen Pack was assigned the case. Pack was familiar with the DePariases because Julita had assisted him in rescuing two other kidnapping victims earlier that year.

On September 14, 1984, while acting on the arrest warrants issued in Florida, SA Pack went to see Flor Ochoa, whom he knew to be an acquaintance of the DePariases. When he arrived at the apartment complex where Ochoa lived, he was met by the apartment manager, Margaret Teamer. She identified, by photograph, Julita, Julio, and Hector DeParias. Teamer informed SA Pack that the identified people were going to try to rent an apartment, but that she would not be sure of it until around September 17, 1984. After talking with Teamer, Pack decided not to contact Ochoa because he did not want the DePariases alerted to the fact that the FBI was looking for them.

Although no surveillance of the apartment complex was performed, Pack and other agents did keep in touch with Teamer. On September 24, 1984, Teamer informed Pack that she had seen the DePariases on that day, but she did not know their whereabouts. However, at approximately 9:30 p.m. that same day, SA Pack received a phone call from Teamer at his home. She told him that she had been lying to him all along, that the DePariases occupied apartment 10, and if a rust-colored Lincoln Continental was in a specific parking stall by the apartment complex, the DePariases would be in the apartment.

SA Pack and several other agents arrived at the apartment complex approximately one hour later. The car mentioned by Teamer was in the parking stall. Pack got the key to apartment 10 from Teamer and had his men surround and surveil all the doors and windows of the apartment. Surveillance showed that two men were in the apartment, with the lights on and watching TV.

As Pack began to unlock the door to the apartment, he discovered that the door

chain was in place. At about the same time, another agent told him that the lights in the apartment had gone out, but the TV was still on. Pack kicked open the door and entered with three other agents; the agents announced that they were agents of the FBI after they had entered the apartment.

Not seeing anyone in the hallway, Pack stepped up to the entrance of the living room and saw a figure lying on the floor in a prone position, pointing a gun at him. No shots were fired. Within seconds, both occupants were placed in custody and put under arrest. The man holding the gun was Jesse Ramirez.

DISCUSSION

Ramirez complains that the evidence of the handgun should be suppressed because the FBI did not have a valid search warrant which gave them the authority to enter the apartment. We disagree.

It is clear that "'an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.'" *United States v. Underwood,* 717 F.2d 482 (9th Cir.1983) (en banc), *cert. denied,* — U.S. ——, 104 S.Ct. 1309, 79 L.Ed.2d 707 (1984) (quoting and applying *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), to the Ninth Circuit). Ramirez contends that apartment 10 was actually his apartment and that because the arrest warrant did not name him, the entry into the apartment was in violation of the fourth amendment. The district court found, however, that Ramirez was not the sole inhabitant of the apartment and that the apartment was the residence of the DePariases, for whom the arrest warrant had been issued. The district court also found that SA Pack reasonably believed that the DePariases were present in the apartment at the time of his entry into the apartment.

SA Pack was acting upon the information provided him from the FBI's teletype concerning the existence of an arrest warrant; his past association with Flor Ochoa and familiarity with the DePariases; the photo identification Teamer made of the DePariases; the phone call from Teamer and her statements that the DePariases had been in apartment 10 all along; that a Lincoln Continental would be in the parking stall; and the fact that the automobile was where Teamer said it would be. The findings of the district court that apartment 10 was the residence of the DePariases, and that SA Pack reasonably believed they were present in the apartment at the time, were adequately supported by the record and thus not clearly erroneous. The entry into the residence of the DePariases was therefore justified under *Payton.*

■ Ramirez argues that *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), applies here. In *Steagald,* the residence searched was that of defendant Steagald, not that of Lyons for whom the arrest warrant was issued. In this case, Ramirez was present in the apartment that was the residence of the DePariases, for whom the arrest warrant was issued. The entry into the apartment was lawful. The fact that Ramirez was present in the residence of the DePariases, or even a co-resident of the apartment with them, does not affect the lawfulness of the entry.

■ Ramirez further contends that because the FBI failed to knock and announce their presence, as required by 18 U.S.C. § 3109, prior to entering the apartment he occupied, that the seizure of the handgun was illegal. We disagree. Compliance with section 3109's requirements may be excused by exigent circumstances. *United States v. McConney,* 728 F.2d 1195, at 1199 (9th Cir.1984). Whether exigent circumstances existed is reviewed *de novo* as a question of law, *id.* at 1205. "A police officer's 'reasonable belief that announcement might place him or his associates in physical peril ... constitutes exigent circumstances that justify noncompliance with the announcement provisions of the statute.'" *United States v. Manfredi,* 722 F.2d 519, 524 (9th Cir.1983).

The district court found that SA Pack possessed a reasonable belief that if he were to announce his presence, he would put himself and others in physical peril. Pack was informed through the teletype that the DePariases were to be considered armed and extremely dangerous; they were suspects in a kidnapping/murder case; Teamer told him that she had informed the DePariases that the FBI was looking for them; other agents informed Pack that there were two males in the apartment; and finally, the raid was taking place late at night. It was for these reasons that SA Pack wanted to be inside the doorway of the apartment before he announced his purpose and presence. We hold that this constituted exigent circumstances justifying the entry without compliance with requirements of section 3109.

When SA Pack rounded the corner leading to the living room of the apartment, he found Ramirez pointing a gun at him. It was in plain view and the seizure of the handgun was incident to a lawful arrest after a lawful entry and need not be suppressed.

We hold that the agents did not violate the fourth amendment nor 18 U.S.C. § 3109. Therefore, the judgment of the district court is

AFFIRMED.