954 F.2d 727
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Daniel NUNN, Defendant-Appellee.
 No. 91-50471.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 5, 1992.*
Decided Feb. 10, 1992.
 
 Before ALARCON, BEEZER RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Daniel Nunn appeals from his conviction for possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and possession of an unregistered firearm in violation of 26 U.S.C. §§ 5861(d), 5871. Nunn seeks reversal on the ground that the district court improperly denied his motion to suppress evidence seized from his residence. Nunn contends that his motion was improperly denied because (1) the warrant obtained by the police to search his residence was overbroad, and (2) the police entered his residence without complying with the knock-and-announce requirement set forth in 18 U.S.C. § 3109. We disagree and affirm.
 
 FACTS AND PROCEDURAL BACKGROUND
 
 3
 In September of 1990, Officer Michael Hook of the El Cajon, California, Police Department Narcotics Task Force received a tip from a confidential informant that Daniel Nunn was selling methamphetamine out of his residence at 702 Billow Drive in San Diego County. Officer Hook verified this tip by using the confidential informant to conduct a controlled buy of methamphetamine from Nunn.
 
 
 4
 After the confidential informant completed the controlled buy of methamphetamine from Nunn, he told Officer Hook that Nunn carried a semiautomatic Glock handgun at all times and that Nunn claimed to have various other weapons at his disposal. The confidential informant also told Officer Hook that Nunn had a closed circuit television system that enabled him to monitor the area around the outside of his house.
 
 
 5
 Officer Hook testified that while he was conducting his investigation of Nunn, he was informed of the results of a separate investigation conducted by another Narcotics Task Force Team (Team 3) concerning the sale of automatic weapons and explosives at Nunn's residence. According to Hook's testimony, the officers of Team 3 told him that a "Cuban individual" had named Nunn as his source for explosives. Team 3 also told Officer Hook that this Cuban individual emerged from Nunn's residence with one quarter pound of T.N.T. The Cuban claimed to have purchased the T.N.T. from Nunn.
 
 
 6
 On October 2, 1990, Officer Hook, other Narcotics Task Force members, and a SWAT team went to Nunn's residence to execute a search warrant. Officer Hook approached the door with various other officers. He announced in a loud voice that they were police with a warrant and requested that the door be opened. There was no reply. Simultaneous with this announcement, other officers fired a flash and concussion grenade into Nunn's backyard to divert his attention and to avoid gunfire at the entrance to the residence. Officer Hook repeated his initial announcement and an additional flash and concussion grenade was fired into Nunn's living room. As Officer Hook was repeating his announcement, the other officers broke down the front door and entered the residence.
 
 
 7
 The officers found Nunn and various other individuals inside his residence. A search of Nunn's pockets disclosed twelve bullets. The officers also seized approximately 6 ounces of methamphetamine, a pound and a half of marijuana, a Glock semiautomatic handgun, a shotgun, three rifles, a rocket launcher, parts for an M-60 machine gun, chemical grenades, approximately 3 pounds of T.N.T., blasting caps, explosives, an unloaded claymore mine, a homemade bomb, detonation cord and approximately eight thousand rounds of rifle ammunition.
 
 
 8
 On December 13, 1990, Nunn pled guilty to possession of approximately 137.25 grams of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in violation of 26 U.S.C. § 5861(d).
 
 DISCUSSION
 
 9
 A. Was the Search Warrant Overbroad?
 
 
 10
 Nunn contends that the search warrant obtained by Officer Hook was overbroad in two respects. First, he argues that the warrant authorized the search and seizure of such a wide category of objects that the officers were able to conduct a general search of his residence. Second, he contends that the warrant was not supported by probable cause because Officer Hook failed to include in his affidavit all of the facts revealed by his investigation.
 
 
 11
 The fourth amendment states that "no Warrants shall issue, but on probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. This language is intended to prohibit "exploratory rummaging in a person's belongings" by the police. Andresen v. Maryland, 427 U.S. 463, 480 (1976). Whether a search warrant describes the items to be seized with sufficient particularity is reviewed de novo. United States v. Schmidt, 947 F.2d 362, 371 (9th Cir.1991). A magistrate's finding of probable cause is treated with deference and will not be reversed unless it is clearly erroneous. United States v. Terry, 911 F.2d 272, 275 (9th Cir.1990).
 
 
 12
 The search warrant issued to Officer Hook describes five categories of items to be seized: (1) controlled substances and the paraphernalia associated with the packaging and use of those substances; (2) firearms and ammunition; (3) documents tending to show possession, occupancy, ownership, and/or control over the house to be searched; (4) records and log books related to the purchase and sale of controlled substances; and (5) fruits and instrumentalities of narcotics trafficking, including cash, gold, jewelry, and financial instruments.
 
 
 13
 Officer Hook alleged in his affidavit that he believed there was probable cause to search for controlled substances based on the results of the supervised purchase of methamphetamine by the confidential informant. Officer Hook also alleged that he believed there was probable cause to search for the remaining items based on his training and experience as a narcotics officer. This experience indicated that narcotics traffickers often keep firearms, ammunition, drug paraphernalia, packaging materials, and records and proceeds of drug transactions in their residences. Officer Hook's affidavit did not include the results of Team 3's investigation of the sale of explosives and ammunition to the Cuban, or the confidential informant's report that Nunn carried a semiautomatic weapon at all times.
 
 
 14
 The search warrant described the items to be seized with sufficient particularity. We have previously upheld warrants that authorize a search for controlled substances and the paraphernalia associated with their manufacture and consumption. See, e.g., United States v. Pollock, 726 F.2d 1456, 1465-66 (9th Cir.1984) (warrant authorized the seizure of "items utilized in the manufacture of methamphetamine, including chemicals, glassware, notes, and other narcotics paraphernalia"). In addition, we have upheld warrants that authorize a search for records, notes, documents, and fruits of illegal drug trafficking in language similar to the wording of the warrant obtained to search Nunn's residence. See, e.g., United States v. Hernandez-Escarsega, 886 F.2d 1560, 1567 (9th Cir.1989) (warrant authorized the seizure of "[r]ecords, including, but not limited to, notes, records and ledgers showing drug transactions, records and drug customer lists, bank records, financial records, currency, bills, log books, photographs, and any other records or documents reflecting the possession and/or distribution of controlled substances; ... records reflecting the acquisition of property obtained with proceeds derived from narcotics trafficking...."). This language is not overbroad because it "effectively [tells] the executing officers 'to seize only those items related to illegal drug trafficking.' " Id. at 1568 (quoting United States v. Fannin, 817 F.2d 1379, 1383 (9th Cir.1987). Finally, we conclude that the remainder of the warrant was sufficiently specific because valid warrants commonly allow the police to search for "firearms and ammunition" as well as documents and effects which tend to show possession, occupancy, ownership and/or control over the residence to be searched. See, e.g., United States v. McLaughlin, 851 F.2d 283, 286 (9th Cir.1988) ("A search warrant may be used, not only to gather evidence of a criminal activity, but also to gather evidence of who controlled the premises suspected of connection with criminal acts."); United States v. Crozier, 777 F.2d 1376, 1380-81 (9th Cir.1985) (upholding warrant authorizing seizure of items that indicate control or ownership of the premises searched).
 
 
 15
 We also reject Nunn's contention that the evidence obtained at his residence must be suppressed because the search warrant was not supported by probable cause. Probable cause to search for controlled substances was adequately established by the results of the supervised purchase of methamphetamine by the confidential informant. The search for paraphernalia, packaging, records and proceeds related to the sale of controlled substances was supported by Officer Hook's experience as a narcotics officer, which suggested that individuals involved in illegal drug trafficking usually keep these items in their homes. See, e.g., Hernandez-Escarsega, 886 F.2d at 1566 (probable cause for a search warrant can be based on an agent's "expert opinion that individuals who traffic in large quantities of illicit drugs generally keep records, proceeds from drug transactions, and other evidence in their homes...."); Fannin, 817 F.2d at 1381-82 (probable cause to issue a search warrant can be based on an officer's past experience that a suspected dealer's residence may contain evidence of drug trafficking).
 
 
 16
 The search for firearms and ammunition was similarly supported by Officer Hook's statement in the affidavit that his "training and experience indicates that persons dealing in controlled substance trafficking frequently arm themselves with firearms and ammunition and keep them available either in their premises, in their vehicle or on their person." See, e.g., United States v. Reese, 775 F.2d 1066, 1074 n. 5 (9th Cir.1985) ("Frequently, in affidavits supporting requests for warrants, officers state, based on their experience, that narcotics dealers possess weapons. Such statements certainly are appropriate and may be considered by magistrates in deciding whether to issue a warrant.").
 
 
 17
 B. Did the Officers Violate the Knock and Announce Requirement?
 
 
 18
 Nunn contends that we must suppress the evidence the police obtained during their execution of the search warrant because the police entered his residence in violation of the knock and announce rule stated in 18 U.S.C. § 3109. We disagree.
 
 Under section 3109, a police officer:
 
 19
 may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.
 
 
 20
 Section 3109 has been interpreted to exclude evidence obtained in a search where the officers have not complied with these provisions. Miller v. United States, 357 U.S. 301, 306 (1958). It is settled, however, that "[e]xigent circumstances excuse noncompliance" with section 3109's requirements. United States v. Turner, 926 F.2d 883, 886 (9th Cir.1991). "A police officer's 'reasonable belief that announcement might place him or his associates in physical peril ... constitutes exigent circumstances ...' " Id. (quoting United States v. Ramirez, 770 F.2d 1458, 1460 (9th Cir.1985)). We review de novo a finding of exigent circumstances. Id. at 887.
 
 
 21
 The record shows that the confidential informant reported to Officer Hook that Nunn was armed with a semiautomatic handgun at all times when he was inside his residence. The confidential informant also told Officer Hook that Nunn had closed circuit cameras monitoring all of the areas from which an individual could approach his residence. Furthermore, Officer Hook had received information from another source that Nunn used his home to sell explosives and ammunition, as well as methamphetamine. Based on this evidence, the district court properly concluded that the officers reasonably believed that compliance with section 3109 would have put them in physical danger.
 
 
 22
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument pursuant to Fed.R.App.P. 34(a), 9th Cir.Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3