**Vicki P. KING and Vicki P. King as Heir at Law of James E. King, Plaintiff,**

v.

**Daryl MARMON, et al., Defendants.**

**Civ. A. No. 91–2012–L.**

United States District Court, D. Kansas.

June 15, 1992.

John P. Gerstle, David R. Gilman, Overland Park, Kan., Benjamin C. Wood, Lawrence, Kan., for plaintiff.

Maurice J. Ryan, City of Kansas City, Kansas, Kansas City, Kan., Lawrence L. Ferree, III., Catherine J. Watson, Ferree, Bunn & Byrum, Chtd., Overland Park, Kan., for defendants.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This case arises out of a police raid on the residence of James King which resulted in the fatal shooting of James King by two police officers. The raid was a joint effort between police officers from Olathe and Kansas City, Kansas. The plaintiff in this case is Vicki King, who was the wife of James King. Plaintiff is asserting claims under 42 U.S.C. § 1983 for excessive force

and unreasonable search and seizure, along with pendent state law negligence and false imprisonment claims. The claims are asserted against seventeen officers of the Olathe and Kansas City, Kansas police departments in their official capacities and individually.

On January 8, 1992, a hearing was conducted in this court on the Motion for Summary Judgment filed by the Olathe officers (Doc. # 66). For the reasons set forth on the record in the hearing, defendants' motion was denied as to the Section 1983 excessive force claim and the state law negligence claim. The court took the matter of the Section 1983 unreasonable search and seizure claim under advisement. For the reasons set forth below, the defendants' motion for summary judgment is denied as to the Section 1983 unreasonable search and seizure claim.

The Olathe police had an individual in custody who informed the police that James King had been involved in several burglaries and that he possessed stolen merchandise at his house. The Olathe police proceeded to put King's house under surveillance and obtained a search warrant for the house. The facts crucial to a determination on defendants' summary judgment motion regarding the plaintiff's Section 1983 claim for unreasonable search and seizure are those involving the knowledge and conduct of the officers during the actual raid on the residence.

It is undisputed that during the briefing and preparation for the raid on the residence the officers were informed that James King was to be considered armed and dangerous. The officers were also informed that several guns were kept inside the residence, including a sawed-off shotgun, a second shotgun, and several revolvers.

The parties' accounts of the circumstances of the raid are at odds. The officers claim that they identified themselves as police officers with a warrant immediately before forcing open the front door and entering the house. They further claim that as they searched the house they made repeated identifications of themselves as police officers. Plaintiff states in her deposition testimony that the officers did not identify themselves in any manner prior to entering the house, nor did the officers identify themselves at any time prior to the shooting of Mr. King.

Following the entry of the officers into the house, it is undisputed that officers Matthew Smith of the Olathe police and Daryl Marmon of the Kansas City, Kansas Police Department confronted Mr. King. Mr. King was standing at the top of the stairs with a sawed-off shotgun in his hand. There is some dispute about the exact position of the shotgun King was holding, but there is no dispute that Officers Smith and Marmon discharged their weapons at King without yelling any type of warning. King was shot seven times, including once in the back.

The defendants' chief argument is that summary judgment on the plaintiff's Section 1983 unreasonable search and seizure claim should be granted on the basis of qualified immunity.

"The doctrine of qualified immunity provides that government officials 'generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Rozek v. Topolnicki,* 865 F.2d 1154, 1157 (10th Cir.1989) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 [102 S.Ct. 2727, 2738, 73 L.Ed.2d 396] (1982)).

The Tenth Circuit has articulated the framework for analyzing a claim of qualified immunity on summary judgment. *Dixon v. Richer,* 922 F.2d 1456 (10th Cir. 1991). Once a defendant raises the defense of qualified immunity, the plaintiff carries the burden of convincing the court the law was clearly established. *Id.* at 1460. The plaintiff must "come forward with facts or allegations sufficient to show both that the defendant's alleged conduct violated the law and the law was clearly established when the alleged violation occurred." *Id.* (quoting *Pueblo Neighborhood Health Centers, Inc. v. Losavio,* 847 F.2d 642, 646 (10th Cir.1988)). The "contours of the

right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). If the plaintiff does not meet this initial burden, the government official is properly spared the burden and expense of proceeding any further, and should be granted summary judgment. On the other hand, if the plaintiff demonstrates to the court that the defendant's alleged conduct violated a clearly established right, then the defendant assumes the normal burden of a movant for summary judgment of establishing that no material facts remain in dispute that would defeat his or her claim of qualified immunity. *Id.*

■ The plaintiff in this case claims that the officers failed to comply with the knock and announce rule of 18 U.S.C. § 3109 before entering Mr. King's house, thereby making the raid and subsequent search of the house unlawful and in violation of plaintiff's constitutional rights. Although the search in this case was conducted by state officers pursuant to a state warrant, the rule incorporated by Section 3109 is merely expressive of the common law rule and thus is equally applicable in the state context. *Simons v. Montgomery County Police Officers,* 762 F.2d 30, 33 (4th Cir. 1985). The statute states:

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

■ The purpose of the statute is to protect officers, as well as occupants, from physical harm, to protect the occupant's right of privacy in his home, and to protect against needless disruption of private property. *Miller v. United States,* 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958). The statute requires law enforcement officials to announce their authority and purpose, and to be denied admittance, before

they break down the door of a house. *Id.* at 306, 78 S.Ct. at 1194.

■ Courts have recognized that compliance with the requirements of Section 3109 may be excused by "exigent circumstances." The term "exigent circumstances," in conjunction with the entry of a residence during the execution of a search warrant, refers to those situations where the officers believe there is an emergency situation and their belief is objectively reasonable. *United States v. Stewart,* 867 F.2d 581, 584 (10th Cir.1989). The reasonableness of the officers' conduct hinges on the facts within their knowledge indicating exigency. *United States v. McConney,* 728 F.2d 1195, 1206 (9th Cir.1984).

Section 3109 contains two separate requirements. The first is that officers knock and announce their authority and purpose. The second is that the officers be refused admittance. An officer's reasonable belief that announcement might place him or his associates in physical peril constitutes an "exigent circumstance" that justifies non-compliance with the announcement provisions of the statute. *United States v. Manfredi,* 722 F.2d 519 (9th Cir. 1983); *United States v. Kane,* 637 F.2d 974 (3d Cir.1981). As to the second requirement of Section 3109, courts have found that only a mild indication of exigency is required to excuse non-compliance with the "refusal of admittance" requirement if no physical damage to the premises is necessary to enter, although more specific inferences of exigency are necessary when physical disruption of property is required to enter. *United States v. Tedesco,* 635 F.2d 902 (9th Cir.1980).

■ In this case the officers claim that they knocked and announced their authority, then immediately entered the King residence. The officers contend their noncompliance with the refusal of admittance requirement of Section 3109 was justified due to their belief that compliance with that provision would place the officers in physical peril. It is undisputed that in the briefing and preparation for the raid on the King residence, the officers were informed that James King was to be considered arm-

ed and dangerous and that there were several firearms located in the residence. Based on prior case authority, this court finds that these circumstances are sufficient to create an "exigent circumstance" to justify non-compliance with the refusal of admittance requirement of Section 3109. *See United States v. McConney,* 728 F.2d 1195 (9th Cir.1984); *United States v. Whitney,* 633 F.2d 902 (9th Cir.1980).

Although the court finds that based on the facts of this case the officers were justified in non-compliance with the refusal of admittance requirement of Section 3109, this case is not ripe for summary judgment due to the disputed facts regarding the announcement of authority and purpose prong of Section 3109. The officers vigorously contend that they did knock and give notice of their authority and purpose prior to entering the King residence. However, the deposition testimony of Vicki King indicates that the officers did not give notice of their identity or purpose at any time prior to the time James King was shot. Officers who possess a valid search warrant need not announce their identity and purpose under Section 3109 before entering a house if they reasonably believe that such an announcement would place them in unwarranted peril. *United States v. Kane,* 637 F.2d 974 (3d Cir.1981). However, in those cases where the court has found justification for non-compliance with the announcement provisions of the statute prior to entering a house, once the officers had gained entry into the house and their presence could be heard by the occupants, the officers gave notice of their identity and authority, thereby satisfying the announcement requirement of Section 3109.

In *United States v. Ramirez,* 770 F.2d 1458 (9th Cir.1985), the court found "exigent circumstances" justifying non-compliance with the notice requirement of Section 3109 prior to officers entering an apartment. The facts creating exigent circumstances in *Ramirez* were that the officers had been informed that the suspects residing within the apartment were armed and dangerous, the suspects were wanted in a brutal kidnapping and murder case, the suspects had been informed that the FBI was looking for them, and the raid was taking place at night. *Id.* at 1461. The officers in *Ramirez* announced they were agents of the FBI immediately after they entered the apartment but before contact with anyone in the apartment. The special agent in charge stated that he wanted to be inside the doorway before he announced his purpose and presence. *Id.*

In *United States v. Kane,* 637 F.2d 974 (3d Cir.1981), the court held that officers who possess a valid search warrant need not announce their identity and purpose pursuant to Section 3109 if they reasonably believe such an announcement would place them in unwarranted peril. *Id.* at 979. The court found that officers who arrived at a house with a search warrant, who had learned that an extensive drug manufacturing operation was taking place therein and that there were at least four people in the house and that they had a number of weapons, had reason to believe that an announcement would place them in unwarranted peril, thus creating exigent circumstances justifying noncompliance with the announce provisions of Section 3109. In *Kane,* the officers entered the house in three separate teams. The first team drove up to the house in an unmarked police car and proceeded to the front door. The second team approached a side basement door and the third team covered a rear kitchen door. An officer knocked on the front door and explained to the man who answered the door that he was searching for an individual referred to him by an antique dealer. The opening of the door was the signal for the other teams to enter the premises. The second team forced its way through the basement door and proceeded up the basement steps to the kitchen, admitting the third team through the kitchen door. The noise of the other units in the house led the agent at the front door to step through the door, grab the suspect by the arm, and announce that he was a federal agent with a search warrant. At the point when the first officer of the second team entered the house, no officer had yet announced his identity and purpose. However, as soon as the noise created by

the officers made it apparent to the occupants of the house that someone was entering the house, the officers announced their identity and purpose.

 Where officers have specific knowledge that occupants within a house may be armed and dangerous, requiring the officers to knock and give notice of their authority and purpose could put those officers in danger by giving such individuals time to reach their weapons. Thus, noncompliance with the announcement requirement of Section 3109 is justified when such exigent circumstances exist. However, once entry has been gained in a manner that alerts occupants that someone is entering the house and the element of surprise is lost, absent some more compelling fact situation that is not present in this case, the reasons justifying noncompliance with the announcement requirement of Section 3109 no longer exist.

A major purpose of Section 3109 is to protect officers, as well as occupants, from physical harm which can occur if law enforcement officers are mistaken as unlawful intruders when entering a residence unannounced. *See United States v. Remigio,* 767 F.2d 730 (10th Cir.1985). In analyzing the particular facts of this case, this court finds that while the officers' belief that Mr. King was armed and dangerous justified their noncompliance with the refusal of admittance requirement of Section 3109, once the officers had entered the front door in a manner that would alert the occupants that someone was entering the house, the officers were required by Section 3109 to announce their identity and purpose. This case, in fact, illustrates very well the reason for that rule. If the officers did not announce, the suspect reasonably could have believed that illegal intruders had broken into his residence and his action in going to the stairs armed with his shotgun, could have been with an eye toward protecting himself, others in the home and his property. Although his actions could thus have been reasonable as the situation appeared through his eyes, his positioning with the shotgun could have appeared quite menacing to the police.

What ultimately occurred here would be a foreseeable result of the ensuing confusion.

Although the officers vigorously contend that they did announce their identity and purpose, the plaintiff has come forward with evidence that the officers failed to announce their identity and purpose at any time prior to the shooting of James King. This disputed fact precludes this court from finding at this time that the method used by the officers to enter the King residence was lawful.

IT IS, THEREFORE, BY THE COURT ORDERED that defendants' Motion for Summary Judgment (Doc. # 66) is denied.

IT IS FURTHER ORDERED that this case is placed on the court's trial calendar beginning September 8, 1992. The parties will receive additional notice as to the case's position on the calendar.

IT IS SO ORDERED.