993 F.2d 1548
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael Courtney MARLOWE, Defendant-Appellant.
 No. 92-5680.
 United States Court of Appeals, Sixth Circuit.
 May 18, 1993.
 
 Before: RYAN and SUHRHEINRICH, Circuit Judges; and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Michael Marlowe appeals his convictions and sentence to this court alleging that numerous errors require reversal. For the reasons stated below, we AFFIRM the district court.
 
 
 2
 * On March 20, 1991, Detective Randy Dunn, a Chattanooga Police Narcotics Officer, and several other Chattanooga police officers executed a search warrant at the apartment of Sonia Hudson. When the police approached Hudson's door, they heard several occupants running around inside the apartment and heard the term "bumrush."[1] The police forced their way into the apartment because, they said, they were afraid evidence might be destroyed. They found Marlowe standing by a window in the back bedroom holding a loaded nine millimeter pistol. He dropped the pistol when he saw the police and was then arrested and searched. The search revealed a pager, $4,000 in U.S. currency, and 10.4 grams of 94% pure heroin. A search of the apartment revealed .44 and .357 magnum revolvers. The police also discovered 117 grams of crack cocaine, 456.3 grams of cocaine powder, a set of scales, cutting agents, and ledgers that allegedly document drug transactions.
 
 
 3
 On May 15, 1991, a federal grand jury returned an eight-count indictment charging Marlowe and three others with narcotics trafficking offenses and firearm offenses. Specifically, Marlowe was charged with conspiracy to distribute and possess with intent to distribute cocaine hydrochloride and cocaine base; possession of heroin, cocaine base and cocaine hydrochloride with intent to distribute them; carrying a firearm during the commission of a drug offense; and possession of a firearm by a felon. An additional count sought forfeiture of Marlowe's weapons.
 
 
 4
 Marlowe filed a motion to suppress the cocaine and the weapons, arguing that the search warrant was not supported by probable cause, that the police exceeded the scope of the warrant when conducting their search, and that the police did not comply with the knock and announce requirement of 28 U.S.C. § 3109. After a two-day suppression hearing, the district court denied the motion to suppress.
 
 
 5
 On June 29, 1991, pursuant to a written plea agreement, Marlowe pled guilty to Count 1 of the indictment, the conspiracy count, Count 4, which charged him with carrying a firearm during the commission of a drug offense, and Count 8, which permitted forfeiture of Marlowe's firearms. Marlowe also agreed to cooperate fully with the government in its investigations of other suspected narcotics traffickers. In exchange, the government agreed to dismiss the other count against him and to bring to the district court's attention at the time of sentencing the "nature, extent, and value" of Marlowe's cooperation. The government also agreed to permit him to pursue his motion to suppress the controlled substances and the firearms before the district court and before any appellate courts.
 
 
 6
 The case was initially set for sentencing on September 30, 1991, but the sentencing hearing was rescheduled three times to permit Marlowe to comply with the provision of the plea agreement requiring his cooperation. Sentencing was set for the fourth time for May 19, 1992. Just before the hearing, Marlowe's lawyer attempted to have the sentencing hearing postponed yet again to allow Marlowe to continue his cooperation but, over Marlowe's objections, the district court refused to delay sentencing further. The district court then sentenced Marlowe to a term of 262 months on Count 1, the minimum possible sentence under the Guidelines, plus five years on the firearm count. The terms are to be served consecutively, as required by statute, for a total term of 322 months. 18 U.S.C. § 924(c) (1988). The defendant then perfected a timely appeal to this court, attacking the denial of his motion to suppress, the denial of his motion to continue the sentencing, and the refusal of the government to move for a § 5K1.1 downward departure.
 
 II
 
 7
 Marlowe first contends that the affidavit used by Detective Dunn to obtain the search warrant precluded the City Court judge from making an independent determination of probable cause because it contained preprinted, conclusory allegations regarding the reliability and credibility of the informant.
 
 
 8
 To support his argument, Marlowe relies in part on Aguilar v. Texas, 378 U.S. 108 (1964), and Spinelli v. United States, 393 U.S. 410 (1969). Under Aguilar and Spinelli, a search warrant affidavit based upon an informant's tip had to include: 1) information on the credibility or reliability of the informant; and 2) information detailing "some of the underlying circumstances from which the informant" obtained the information. United States v. Pelham, 801 F.2d 875, 877 (6th Cir.1986) (quoting Aguilar, 378 U.S. at 114), cert. denied, 479 U.S. 1092 (1987).
 
 
 9
 In Illinois v. Gates, 462 U.S. 213 (1983), however, the Supreme Court rejected the rigid Aguilar-Spinelli test in favor of a new totality of the circumstances approach. Id. The Gates Court held that the two elements from Aguilar-Spinelli are "a relevant consideration" used to illuminate "the commonsense practical question" of whether there is probable cause to believe that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. A weak showing under one prong "can be compensated for ... by a strong showing as to the other, or by some other indicia of reliability." Id. at 233. Thus, the inquiry for an issuing magistrate or judge is whether a practical, commonsense evaluation of the totality of the circumstances presented in the materials supporting the application for a search warrant gives rise to a fair probability that evidence of a crime or contraband will be found in the place to be searched. Id. at 233, 238.
 
 
 10
 Reviewing courts must give the probable cause determinations of issuing judges and magistrates "great deference." Pelham, 801 F.2d at 877. Thus, an appellate court does not review de novo a magistrate's probable cause determination. Gates, 462 U.S. at 236. Rather, the task of a reviewing court is to "ensure that the magistrate had a 'substantial basis for ... conclud[ing] that a search would reveal evidence of wrongdoing.' " Id. at 238.
 
 
 11
 In this case the affidavit states, albeit in boilerplate form, that the confidential informant has provided accurate information in the past. The affidavit also alleges that the informant saw cocaine in Hudson's apartment within 72 hours of the presentation of the affidavit to the City Court judge. The affidavit further alleges, again in boilerplate form, that the informant has seen known cocaine users going to and coming from the premises.
 
 
 12
 As the Gates Court stated, "affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation" and should be interpreted in a "commonsense" rather than a "hypertechnical" manner. Gates, 436 U.S. at 235-36; Pelham, 801 F.2d at 878. If we interpret Dunn's affidavit in a commonsense manner, it is apparent that the City Court judge had a substantial basis for concluding that controlled substances would be discovered at Hudson's apartment. Further, the mere fact that many of the allegations are in preprinted form does not, by itself, undercut the finding of probable cause. Thus, Marlowe's argument that the affidavit does not support a finding of probable cause is meritless.
 
 
 13
 Even if we found that the warrant were lacking in probable cause, however, we would still have to affirm the denial of the motion to suppress because we believe that the Chattanooga police relied in good faith upon a facially valid warrant. United States v. Leon, 468 U.S. 897 (1984).
 
 III
 
 14
 Marlowe next contends that the district court should have granted him a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), to determine whether Dunn fabricated the existence of his informant.
 
 
 15
 In Franks, the Supreme Court held that an affidavit supporting a search warrant is entitled to a presumption of validity; however, the defendant is entitled to a hearing on the veracity of the affidavit if he makes specific allegations of deliberate falsehood or reckless disregard for the truth on the part of the affiant (not the informant ) and supports these allegations with an offer of proof. Id. at 171. The offer of proof must consist of affidavits or sworn "or otherwise reliable statements" that support the contention that the affiant deliberately or recklessly falsified information in the affidavit. Id. If the defendant does not produce such sworn or reliable statements, their absence must be satisfactorily explained. Id.
 
 
 16
 In the case at bar, Marlowe did not allege that the affidavit contained false statements until the beginning of the suppression hearing. His motion to suppress contained two allegations: 1) that Dunn's affidavit on its face did not support a finding of probable cause; and 2) that the warrant was improperly executed. Since Marlowe did not make specific allegations regarding the falsity of the affidavit and did not make an offer of proof, the district court was correct to deny Marlowe a Franks hearing.
 
 
 17
 Nevertheless, Marlowe now contends that the evidence elicited during the suppression hearing amounts to an offer of proof which required the district court to give him a Franks hearing. We also reject this contention. The testimony on which Marlowe relies is that of Sonia Hudson and Special Agent John Scott, a federal agent. Even if we considered their testimony as an offer of proof, Marlowe still is not entitled to a Franks hearing because their testimony does not establish that Dunn fabricated the existence of the confidential informant: Hudson admitted at the suppression hearing that she had cocaine in her apartment and that Marlowe sold this cocaine to an unknown person approximately 72 hours before the search warrant was executed. Moreover, the district court conducted an in camera interview of Detective Dunn and was satisfied that Dunn did not fabricate the existence of the informant.[2]
 
 
 18
 Marlowe contends, however, that in cases involving confidential informants, it is difficult for the defendant to make the offer of proof because the defendant cannot interview a confidential informant to determine if the affiant is lying. Therefore, he contends, under Franks, he need not make a more detailed offer of proof than he made because his inability to question the confidential informant is a satisfactory explanation for the absence of proof that the affiant lied.
 
 
 19
 Although Marlowe is correct that it is impossible for defendants to present affidavits from unknown confidential informants, he could have obtained affidavits from other persons involved in the case to prove that Dunn was lying, or that the information in the affidavit was wrong. Then perhaps he might have been entitled to a Franks hearing to the extent that he did not receive one. But he has not even presented evidence that information contained in the affidavit was untrue. Thus, we conclude that the district court did not err in refusing to give Marlowe a Franks hearing to the extent that he did not receive one.
 
 IV
 
 20
 Marlowe next contends that the manner in which the Chattanooga police entered Hudson's apartment was unreasonable and violated the Fourth Amendment and 18 U.S.C. § 3109 (1988). At the outset it must be noted that § 3109 may not even apply to the actions of the Chattanooga police. Indeed, although the controversy in the district court centered around § 3109, the government contends before this court that the Fourth Amendment restrictions rather than the more stringent requirements of § 3109 should apply. Since the district court relied upon § 3109 and the government did not object to its doing so, this court will apply § 3109 to this issue.[3]
 
 
 21
 Section 3109 authorizes officers executing search warrants to break down a door to execute a search warrant if, after they knock and announce their purpose, they are refused entry. 18 U.S.C. § 3109 (1988). The officer is also justified in forcing his entry when exigent circumstances exist. United States v. Singer, 943 F.2d 758 (7th Cir.1991); United States v. Harris, 713 F.2d 623 (11th Cir.1983).
 
 
 22
 This court reviews the district court's determination that the requirements of § 3109 were met under the clearly erroneous standard. United States v. Gonzalez, 697 F.2d 155, 157 (6th Cir.1983) (per curiam). "To be clearly erroneous ... a decision must strike [the court] as more than just maybe or probably wrong; it must ... strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish." United States v. Perry, 908 F.2d 56, 58 (6th Cir.1990) (quoting Parts and Elec. Motors, Inc. v. Sterling Elec., Inc., 866 F.2d 228, 233 (7th Cir.1988), cert. denied, 493 U.S. 847 (1989)), cert. denied, 498 U.S. 1002 (1990).
 
 
 23
 The findings of the district court are adequately set out in section I of this opinion above. A careful review of the record indicates that these findings are not clearly erroneous. Accordingly, we conclude that this argument has no merit.
 
 V
 
 24
 Marlowe next contends that the government violated the plea agreement when it refused to file a motion for a U.S.S.G. § 5K1.1 downward departure to compensate Marlow for his cooperation up to the time of sentencing.
 
 
 25
 This court has held that plea agreements are contractual in nature and must be interpreted in the manner of contracts. United States v. Johnson, 979 F.2d 396, 399 (6th Cir.1992). Paragraph 6 of the agreement provides:
 
 
 26
 At the time of sentencing the United States agrees to bring to the Court's attention the nature, extent, and value of the defendant's cooperation. This information will be provided to the Court so that it may be considered in determining a fair and appropriate sentence under the facts of the case.
 
 
 27
 J.A. at 47.
 
 
 28
 Thus, paragraph 6 only required the government to point out to the court at the time of sentencing the extent of Marlowe's cooperation. It did not require the government to file a motion for downward departure under U.S.S.G. § 5K1.1. Since the plea agreement did not require the government to file the § 5K1.1 motion, the decision to move the court for a downward departure lies within the discretion of the prosecutor, Wade v. United States, 112 S.Ct. 1840, 1843-44 (1992), and only if the prosecutor's decision not to file a motion for a § 5K1.1 downward departure is based upon an unconstitutional motive can this court provide relief for the defendant. Id. Marlowe has not even attempted to show that the government's failure to file a motion for a downward departure was based upon unconstitutional motives. Thus, his argument is meritless.
 
 VI
 
 29
 Marlowe next contends that the district court should have continued his sentencing hearing until he completed his cooperation. Rule 32(a)(1) of the Federal Rules of Criminal Procedure permits the district court to delay sentencing where a factor important to sentencing has not been resolved. Fed.R.Crim.P. 32(a)(1). One such factor can be cooperation by the defendant. Id. Advisory Committee Notes to 1989 Amendment. Both parties agree that the district court's refusal to grant the continuance is reviewed under an abuse of discretion standard.
 
 
 30
 We conclude that the district court did not abuse its discretion when it refused to continue, for the fourth time, Marlowe's sentencing hearing. First, the court took into account Marlowe's cooperation when it set his sentence at the low end of the Guidelines range in recognition of his cooperation up to the time of sentencing. Second, the court had already waited almost a year after Marlowe had entered his guilty plea to sentence him. Third, under Federal Rule of Criminal Procedure 35, the government can move the district court to reduce his sentence up to one year after sentencing if Marlowe cooperates further. Finally, the government and the district court indicated at a conference before the sentencing hearing that Marlowe could withdraw his guilty plea if he felt that he was being sentenced prematurely.
 
 
 31
 Marlowe contends, however, that waiting for the government to make a motion pursuant to Rule 35 may visit an injustice on him. He contends that Rule 35 could be read to permit the court to consider assistance that he has rendered only after imposition of the sentence. Thus, he contends, his cooperation prior to imposition would not be recognized. This argument is spurious in the instant case because the district court gave Marlowe the minimum possible sentence under the Guidelines because of his cooperation up to the time of sentencing.
 
 VII
 
 32
 We AFFIRM the judgment of the district court.
 
 
 33
 RYAN, Circuit Judge, concurring separately.
 
 
 34
 While I concur in the result reached in the majority opinion and the judgment to be entered, I respectfully disagree with the approach the court has taken in the issue addressed in part IV of the majority opinion.
 
 
 35
 My brothers are satisfied to resolve the defendant's challenge to the lawfulness of the search of his apartment by affirming the district court's determination that the search was not unreasonable under the Fourth Amendment and did not violate 18 U.S.C. § 3109 (1988). While acknowledging that section 3109 "may not even apply to the actions of the Chattanooga police," the court agrees to decide whether its terms were violated in this case because "the district court relied upon § 3109 and the government did not object to its doing so...."
 
 
 36
 Although we do not, as a general rule, resolve issues on appeal that are not first raised in the lower court--and the applicability of section 3109 to a search conducted by state officers was not raised in the lower court--that does not mean to me that this court is obligated to apply a federal statute to a state law enforcement action when it is plainly inapplicable. In my judgment, it is plain that section 3109 is inapplicable to searches conducted by state law enforcement officers.
 
 
 37
 First of all, 18 U.S.C. § 3109 is manifestly a federal statute. Nothing in its language purports to suggest that it is applicable to enforcement actions taken by state officers. Moreover, in United States v. Moore, 956 F.2d 843 (8th Cir.1992), the court stated that section 3109 governs only "the permissible scope of ... searches by federal law enforcement officers." A majority of federal courts that have addressed the issue have reached the same conclusion. See United States v. Mitchell, 783 F.2d 971, 973-74 (10th Cir.), cert. denied, 479 U.S. 860 (1986); United States v. Andrus, 775 F.2d 825, 844 (7th Cir.1985); Simons v. Montgomery County Police Officers, 762 F.2d 30, 32 n. 1 (4th Cir.1985), cert. denied, 474 U.S. 1054 (1986); United States v. Jefferson, 714 F.2d 689, 693 (7th Cir.1983); United States v. Valenzuela, 596 F.2d 824, 829-30 (9th Cir.), cert. denied, 441 U.S. 965 (1979); United States v. Doust, 728 F.Supp. 41, 47 (D.Me.1989), aff'd, 916 F.2d 757 (1st Cir.1990). But see, King v. Marmon, 793 F.Supp. 1030 (D.Kan.1992).
 
 
 38
 Although in the ordinary case I would not be willing to address an issue raised for the first time on appeal, I think this case is an appropriate exception to that rule. We should not be seen as acquiescing in the patently erroneously application of a federal statute to state law enforcement action simply because the lower court did so and the government failed to object.
 
 
 39
 I am satisfied that the legitimacy of the search of the defendant's apartment should be tested against the settled principles of Fourth Amendment search and seizure law, and that so tested, the search here was not unreasonable.
 
 
 40
 For those reasons, and because I concur in the balance of the majority opinion, I shall join in the judgment affirming the conviction and sentence below.
 
 
 
 [1]
 The term "bumrush" is a slang term commonly used in Chattanooga to refer to a narcotics raid. The term "bumrushers" refers to narcotics officers themselves
 
 
 [2]
 Further, at the suppression hearing, the district court gave Marlowe a considerable amount of latitude in questioning witnesses regarding the veracity of the allegations contained in the affidavit. A fair reading of the record of the suppression hearing indicates that it substantially amounted to a Franks hearing
 
 
 [3]
 While we do not, because it did not so contend below, resolve the government's contention on appeal that § 3109 does not apply to these local officers, we recognize that it has been held in other circuits that § 3109 does not apply. See, e.g., United States v. Moore, 956 F.2d 843, 846 (8th Cir.1992)