**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John FANNIN, Defendant-Appellant.**

**No. 86–1118.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 15, 1987.

Decided May 21, 1987.

Dennis P. Riordan, Harold J. Rosenthal, San Francisco, Cal., for the defendant-appellant.

Sanford Svetcov, San Francisco, Cal., for the plaintiff-appellee.

Before HUG, NELSON and NOONAN, Circuit Judges.

NELSON, Circuit Judge:

John Fannin appeals from the district court's denial of his motion to suppress evidence admitted at his trial. Fannin was convicted in the district court on nineteen counts of attempted drug importation and distribution, illegal transport of money, conspiracy to import drugs, and related offenses. He contends that evidence seized from his home and introduced at trial was obtained pursuant to an invalid warrant and thus should have been suppressed. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 9, 1984, agents of the Drug Enforcement Agency ("DEA") and the Internal Revenue Service ("IRS") conducted a search, pursuant to a warrant, of the residence of defendant John Fannin. The search warrant had been issued by a magistrate earlier the same day, based on an affidavit submitted by DEA Agent Lowrey Leong. Agent Leong's affidavit recounted the following.

In July 1984, Agent Leong was informed by a Special Agent of the U.S. Customs Service that a shipping container filled with hashish had arrived at the American Presidents Line's ("APL") terminal in Oakland, California. The container was kept under surveillance by DEA and Customs agents, but no one claimed it. In early August, Agent Leong met a confidential informant who put Leong in touch with a woman, Patricia Tillman, who was trying to steal the shipment of hashish out of the APL terminal. Agent Leong, acting undercover, offered to get the container out of the APL terminal for a fee of $30,000. Tillman told Agent Leong that he would have to meet with two or three of her associates in order to finalize the deal.

Agent Leong met on August 8, 1984 with two men, Vince and Stewart, as arranged by Tillman. The men discussed the scheme to steal the hashish shipment and Agent Leong continued to negotiate his fee for doing the job. At this point a man named Johnny, later identified by Agent Leong as defendant John Fannin, arrived carrying a brown paper bag. Fannin said that he understood that Leong wanted $30,000 and that he had brought the money with him. Leong then demanded $100,000 to remove the container of hashish from the APL terminal. The three men eventually agreed to pay Leong $100,000 and to meet the next day at a restaurant to give Leong the money.

On August 9, 1984, Agent Leong met again with Vince and Stewart. Fannin did not appear for the meeting. The two men told Leong that they had $100,000 in their car. Vince left the restaurant and returned with a canvas sack containing the money. DEA agents arrested Vince and Stewart immediately.

The affidavit also stated that Agent Leong had been a Special Agent for the DEA for approximately fourteen years and had participated in more than 500 investigations of federal narcotics and financial investigations and more than 100 searches of premises owned or used by traffickers in narcotics. Leong stated that, based on his experience and training, he believed it typical for narcotics traffickers to maintain in their residences books and records of illegal transactions, address and telephone books showing the identities of their cus-

tomers and suppliers, as well as cash, narcotics, and narcotics paraphernalia. Agent Leong also relied on the opinion of IRS Special Agent Jack McMenimen, who had worked closely with DEA, FBI, and U.S. Customs Agents over the course of eleven years. Special Agent McMenimen confirmed Leong's conclusion that drug traffickers typically keep in their residences the records and items described in the affidavit.

Based on the information provided in Agent Leong's affidavit, a magistrate issued a search warrant for Fannin's residence. The affidavit was attached to the search warrant and incorporated by reference therein. The warrant authorized the seizure of a variety of items, including correspondence, bank records, photographs, telephone answering devices, currency, ledgers, and other items providing evidence of illegal trafficking in controlled substances, profits derived from such trafficking, and the identities of persons engaged in such trafficking; hashish and other controlled substances and drug paraphernalia; documents and items tending to establish ownership and control of the premises and the property therein; and

> other evidence, at this time unknown, of the specific crimes and fruits of the crimes described in the supporting affidavit, namely the commission of, conspiracy to commit, and the aiding and abetting and causing of the following: offenses pertaining to the unlawful importation, possession, and distribution of controlled substances ... and Interstate and Foreign Travel and Transportation in Aid of Racketeering.... The above described items are the fruits, instrumentalities, and evidence of violations of the above offenses.

On August 9, 1984, DEA and IRS agents executed the search of defendant Fannin's residence. They seized a number of documents which were used at trial and bolstered the evidence against Fannin, but found no cash or contraband. Fannin was not apprehended until almost one year later, in July 1985. The government filed an indictment in August 1985, charging Fannin with felonies under 21 U.S.C. §§ 841,

846, 848, 952; 31 U.S.C. § 5316; and 18 U.S.C. § 1952. Fannin filed a motion to suppress the fruits of the search of his premises, arguing that the warrant was invalid. Fannin claimed that the warrant was overbroad and not supported by probable cause. The district court denied the motion in November 1985. Fannin waived his right to a jury trial and was convicted by the district court on all but two of the counts.

## II. DISCUSSION

### A. *Standard of Review*

 Determinations of probable cause must be upheld if, under the "totality of the circumstances" surrounding a request, the issuing magistrate had a substantial basis for finding probable cause. *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *United States v. Angulo-Lopez*, 791 F.2d 1394, 1396 (9th Cir.1986). The magistrate's finding of a "substantial basis" is given great deference. *Angulo-Lopez*, 791 F.2d at 1396 (applying a standard of review "less probing than de novo" review); *cf. United States v. Estrada*, 733 F.2d 683, 684 (9th Cir.), *cert. denied*, 469 U.S. 850, 105 S.Ct. 168, 83 L.Ed.2d 103 (1984) (applying a clearly erroneous standard of review). This court reviews de novo the district court's finding that a warrant describes with sufficient particularity the items to be seized. *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir.1986); *United States v. Hayes*, 794 F.2d 1348, 1354 (9th Cir. 1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987).

### B. *Analysis*

#### 1. *Probable Cause*

 Agent Leong relied on past experience with drug traffickers to conclude that evidence linking Fannin to drug trafficking might be found at Fannin's residence. Fannin contends that Leong's conclusion did not furnish a substantial basis on which the magistrate could find probable cause to search Fannin's residence. However, this

court has said that in weighing the evidence supporting a request for a search warrant, a magistrate may rely on the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found. *United States v. Crozier,* 777 F.2d 1376, 1380 (9th Cir. 1985); *United States v. Valenzuela,* 596 F.2d 824, 828–29 (9th Cir.), *cert. denied,* 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979). This circuit has recognized that "[d]irect evidence that contraband or evidence is at a particular location is not essential to establish probable cause to search the location." *Angulo-Lopez,* 791 F.2d at 1399. A magistrate "is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *Id.* The magistrate

> need not determine that the evidence sought is *in fact* on the premises to be searched ... or that the evidence is more likely than not to be found where the search takes place.... The magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit.

*United States v. Peacock,* 761 F.2d 1313, 1315 (9th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 139, 88 L.Ed.2d 114 (1985) (citations omitted).

In *Peacock,* drug enforcement agents requested a warrant to search the defendants' residence. The affidavit supporting the request stated that the officers found barrels in the desert that contained remnants of drugs, that witnesses had seen a U–Haul truck in the vicinity, that the truck was traced to the defendants (one of whom had been seen driving it at the time that the barrels were unloaded), and that barrel imprint rings were visible on the truck's bed. *Peacock,* 761 F.2d at 1315. This court held that, under the deferential standard of review required, the circumstantial evidence discovered by the officers linking the defendants to a drug scheme provided "more than a sufficient showing for obtaining the warrant to search [their] ... residence." *Id.* at 1315–16.

This court reaffirmed the *Peacock* reasoning in *Angulo-Lopez.* In that case, a DEA agent presented an affidavit to a magistrate to support a search[warrant for the residence of a suspected drug dealer. The affidavit recited information relayed to the agent by informants, DEA agents, and local police officers. *Id.* at 1395. Police surveillance units had observed the defendant engaged in transactions which the informants claimed were drug deals, although the police did not see any direct evidence of drugs or money changing hands. *Id.* at 1396. The court held that the affidavit supported a finding of probable cause, despite the lack of direct evidence of criminal activity, reasoning that "[i]n the case of drug dealers, evidence is likely to be found where the dealers live." *Id.* at 1399. The court also approved the search of the residence of anyone reasonably suspected of being in a ring of traffickers, whether or not he is the leader, because "a fair probability exists that drugs will be present at the assistants' residence as well as the ringleaders'." *Id.*

■ According to the analyses in *Peacock* and *Angulo-Lopez,* Agent Leong's firsthand knowledge of Fannin's involvement in drug trafficking gave him probable cause to believe that evidence of the crime might be found in Fannin's residence. We find, therefore, that the magistrate had a substantial basis for finding probable cause and issuing the warrant to search Fannin's residence.

### 2. *Particularity of the Description in the Warrant*

The fourth amendment requires that a warrant "particularly describ[e] the place to be searched, and the person or things to be seized." U.S. Const. amend. IV. Warrants which permit " 'general, exploratory rummaging in a person's belongings' " are prohibited. *United States v. McClintock,* 748 F.2d 1278, 1282 (9th Cir.1984), *cert. denied,* —— U.S. ——, 106 S.Ct. 75, 88 L.Ed.2d 61 (1985) (quoting *Andresen v. Maryland,* 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976). Fannin contends that the warrant was overbroad and

did not describe with sufficient particularity the items to be seized from his residence. We find that the warrant was not constitutionally infirm.

This court stated recently that a warrant "need only be reasonably specific in its description of the objects of the search and need not be elaborately detailed." *Hayes,* 794 F.2d at 1354. Accordingly, the court upheld a warrant which authorized seizure of

> controlled substance[s] ... all records which document the purchasing, dispensing and prescribing of controlled substances, including, but not limited to, records contained in patient charts ... patient logs, appointment books and other records and ledgers reflecting distribution of controlled substances ... correspondence concerning the procuring, transferring, administering, prescribing or dispensing of controlled substances ... all of which constitute evidence of possible violations....

*Id.* at 1355. This court found that because the warrant limited the officers to seizing those items related to controlled substances, the articulated standard was a reasonable guide to the officers who conducted the search. *Id.* at 1356. The court also ruled that the warrant did not have to be limited to authorizing seizure of those documents known to exist, because the "known [evidence] could fairly be considered as representative of more pervasive violations of the [law]." *Id.*

Similarly, this court has upheld the portion of a warrant that authorized the seizure of " 'records, notes, documents indicating [the defendant's] involvement and control of prostitution activity including *but not limited to,* photographs, handwritten notes, ledger books, transportation vouchers and tickets, hotel registration, receipts, bank documents as deposit slips, checks and records, toll records, bail bondsmen receipts and medical billings.' " *United States v. Washington,* 797 F.2d 1461, 1472 (9th Cir.1986). The court found the language of the warrant not overly broad because it "effectively tells the officers to seize only those items indicating prostitution activity." *Id.*

The Fannin warrant limited the scope of the search to those items related to particular criminal activity that was named and described in the warrant and the attached affidavit. It listed the categories of documents and items sought and specified that only those items "tending to establish illegal trafficking in hashish and other controlled substances, profits and the investment of profits derived from such illegal trafficking, and the identities of the persons engaged in such illegal trafficking" should be seized. As such, it effectively tells officers to seize only those items related to illegal drug trafficking.

In contrast, search warrants that lack sufficient particularity and are not accompanied by specific affidavits have been held overbroad by this circuit. For example, in *Washington,* this court held overbroad those sections of the search warrant authorizing the seizure of "articles of personal property *tending to establish the wealth and financial status of [the defendant]*" and "evidence of association ... with the following persons *but not limited to them." Washington,* 797 F.2d at 1472–73 (emphasis in the original). In *United States v. Cardwell,* 680 F.2d 75 (9th Cir. 1982), we invalidated a search warrant in which the "only limitation on the search and seizure of the appellant's business papers was the requirement that they be the instrumentalities or evidence of the general tax evasion statute." *Cardwell,* 680 F.2d at 77. And in *Crozier,* 777 F.2d at 1381, this court suppressed evidence obtained pursuant to a warrant which authorized the seizure of "[m]aterial evidence of violation [sic] 21 U.S.C. 841, 846, (Manufacture and Possession with intent to distribute Amphetamine and Conspiracy)."

Our decision in *Spilotro* makes clear that this court will not uphold warrants that are overbroad. In *Spilotro,* we held invalid a wide-sweeping warrant which did not describe the nature of the suspected criminal offense, but merely recited United States Code titles and sections. *Spilotro,* 800 F.2d at 964. As in *Washington, Cardwell,*

**1384**

and *Crozier,* no affidavit was attached to the warrant, so that the deficiency in specificity could not be cured. *Id.* at 967; *see also United States v. Hillyard,* 677 F.2d 1336, 1340 (9th Cir.1982) (in order to cure a warrant's lack of specificity, an affidavit must be attached to and incorporated by reference in the warrant). While invalidating the warrant, we explained that the warrant could have been valid (1) had the warrant described "in greater detail the items one commonly expects to find on premises used for the criminal activities in question," or (2) had the warrant referred to specific criminal activities, or (3) had a descriptive affidavit been attached to and incorporated in the warrant. *Id.* at 964, 967. Because the Fannin warrant satisfies all three conditions, it is sufficiently particular.

 Fannin argues that the warrant to search his residence, as distinguished from the valid warrants in the cases discussed above, was rendered overbroad by the catchall phrase at the end of the warrant permitting seizure of "other evidence, at this time unknown." The description of items to be seized must be specific enough to enable the executing officers to identify those items which may legitimately be seized. *Spilotro,* 800 F.2d at 963. "Other evidence," without further specification, is not a sufficiently particular description. The government may not rely on general, sweeping language that permits seizure of any item. However, as indicated above, any potential constitutional infirmity in the Fannin warrant was cured by satisfying the three *Spilotro* factors.

### III. CONCLUSION

The district court properly held that the warrant authorizing the search of Fannin's residence and the seizure of numerous items was supported by probable cause. The warrant was not overbroad because the evidence that was seized was evidence which related to the criminal activity described in the warrant and its accompanying affidavit. Although the "other evidence" language of the warrant is not sufficiently particular standing alone, that de-

ficiency was cured by the particularity of the attached and incorporated affidavit. Accordingly, we affirm the decision of the district court to deny Fannin's motion to suppress evidence seized pursuant to the warrant.

AFFIRMED.