968 F.2d 1222
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Lee REED, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Joseph TINKLE, Jr., Defendant-Appellant.
 Nos. 91-10203, 91-10276.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 14, 1992.
Decided July 20, 1992.
 
 Before WALLACE, Chief Judge, and CHOY and POOLE, Circuit Judges.
 
 MEMORANDUM
 
 1
 Reed and Tinkle appeal their convictions and sentences for conspiracy under 21 U.S.C. §§ 841(a)(1), 846. We have jurisdiction over these timely appeals pursuant to 28 U.S.C. § 1291. We affirm.
 
 
 2
 Reed and Tinkle argue that the district court erred by finding that the government officers did not intentionally or recklessly omit material facts or include material falsehoods in the search warrant affidavit. In order to invalidate the search, Reed and Tinkle "must prove by a preponderance of the evidence that there was a knowing and intentional falsehood or a reckless disregard for the truth, and that the challenged statement was essential to the finding of probable cause." United States v. Dozier, 844 F.2d 701, 705 (9th Cir.), cert. denied, 488 U.S. 927 (1988).
 
 
 3
 The affidavit in this case legally described the property. The warrant utilized a nearly identical description of the property. The description of the trailers and shed was based on aerial photographs, and these photographs were attached to the affidavit and warrant. When the warrant was executed, it was discovered that the photographs were taken of the wrong property. Moreover, there were other minor "errors" in the affidavit's description of the property. However, the remaining description of the property combined with the knowledge of the officers enabled the officers to locate and search the correct residence.
 
 
 4
 The district court found that the officers' errors were not intentional or reckless. This finding can be disturbed only if it is clearly erroneous. Id. The only significant error committed by the officers was photographing the incorrect property. However, the officer who misidentified the property during the fly over filed a declaration stating that this was an inadvertent error attributable to the fact that he had no experience identifying landmarks from the air. Moreover, the officers did not solely rely on these photographs. The district court determined, and the evidence shows, that the officers took other significant steps to identify the residence to be searched.
 
 
 5
 Reed and Tinkle also argue that the officers should have engaged in surveillance of the Begonia Way residence to ensure that it was the correct residence and to obtain a more accurate description. However, the officers believed that surveillance was not practical or safe due to the rural location of the residence.
 
 
 6
 Reed and Tinkle also argue that the affidavit, as reconstructed to include all material facts and omit all falsehoods, did not establish probable cause to search the Begonia Way residence. We review a district court's probable cause determination in a case with a redacted affidavit de novo. Id. at 706. We must consider the totality of the circumstances and "determine whether the district court had a substantial basis for concluding that probable cause existed." Id. To sustain the warrant in this case, the "affidavit must contain sufficient evidence to support an inference that drugs might be found" at the Begonia Way residence. United States v. Cardona, 769 F.2d 625, 630 (9th Cir.1985). The court "is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." United States v. Fannin, 817 F.2d 1379, 1382 (9th Cir.1987) (internal quotations omitted).
 
 
 7
 There were sufficient facts indicating that drugs would be found at the Begonia way residence. For example, a briefcase containing over one pound of methamphetamine and other drug trafficking evidence was linked to Reed, and Reed had previously been linked with illegal drugs. Reed resided at the Begonia Way residence, and the residence was also correctly described as parcel 56-290-39 on Begonia Way. Under the totality of the circumstances, these facts support a finding of probable cause that drugs might be found at the Begonia Way residence. See id. at 1382 (drug evidence is likely to be found at the dealer's residence). In this case, the inaccuracies in the affidavit and the warrant are more relevant to whether the residence has been described with sufficient particularity than to whether there was probable cause.
 
 
 8
 The "test for determining the sufficiency of the warrant description is whether the place to be searched is described with sufficient particularity to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premises might be mistakenly searched." United States v. Turner, 770 F.2d 1508, 1510 (9th Cir.1985) (internal quotations omitted), cert. denied, 475 U.S. 1026 (1986). In Turner, we upheld the search of a house although the affidavit and the search warrant listed the incorrect house number. Id. at 1510-11. We upheld the search because the warrant otherwise correctly described the house, no nearby house met the same description, the house had previously been under surveillance, the agent executing the warrant personally knew which house was to be searched, and the correct house was searched. Id. at 1511.
 
 
 9
 This case is very similar. The remaining information in the warrant adequately identified the property, and the executing officers had personal knowledge that verified that the warrant authorized the search of the premises located. For example, the officers knew that the property was on Begonia way between the McClain's parcel and the Snyder's parcel. The officers confirmed that the premises to be searched matched this description before conducting the search, and the declarations submitted by the executing officers verify that they were certain that they had located the correct residence. Therefore, the officers were not required to abandon the search and seek a new warrant. The misdescription given in the affidavit and warrant could not have reasonably led the officers to search the wrong property because no property matching the overall description existed on Begonia Way.
 
 
 10
 Reed and Tinkle argue that Turner is distinguishable because the officers did not conduct any surveillance of the Begonia Way property. That is a factual difference, but irrelevant here because the officers reasonably believed that any surveillance of the property would be dangerous because of the risk of discovery. The officers took other precautions to ensure that they had adequate information to locate the property accurately.
 
 
 11
 United States v. Collins, 830 F.2d 145 (9th Cir.1987), is clearly distinguishable. In Collins, a warrant was issued with the incorrect address and incorrect description of the location of the residence to be searched. Id. at 145. With the issuing judge's oral approval, the agents amended the warrant by correcting the description of the residence and changing the address. However, the agents once again used the incorrect address. The agents then executed the warrant and located the correct residence only after searching the wrong residence. Id. In contrast, the agents in this case searched the correct residence and took precautions to ensure that they had correctly identified the residence.
 
 
 12
 We hold that the warrant and search were valid, and thus the district court did not err. Therefore, we do not need to reach the issue of whether the searches could be upheld under the good faith exception to the warrant requirement.
 
 
 13
 Reed also argues that the district court erred by denying him a reduction for acceptance of responsibility. See United States Sentencing Commission, Guidelines Manual § 3E1.1 (Nov. 1990) (U.S.S.G.). We review a district court's denial of a reduction for acceptance of responsibility for clear error. United States v. Gonzalez, 897 F.2d 1018, 1019 (9th Cir.1990). The district court's determination can be disturbed only if it is "without foundation." Id. (internal quotations omitted).
 
 
 14
 The district court denied the reduction because it found that "Reed was substantially more involved in the manufacturing of the methamphetamine than he admits." The presentence report also expresses the belief that Reed "played a more active role in the operation" than he is willing to admit. There was evidence linking Reed to the operation, and the district court was not required to accept Reed's self serving account of the events. There was no clear error.
 
 
 15
 In his supplemental brief, Reed also contends that the district court erred by failing to give him notice of its intent to deny this reduction. The government responds that we should not consider this argument because it was raised for the first time in Reed's supplemental brief. The order granting Reed's motion to file the brief gave the government only ten days to object to the filing of the brief. The government apparently failed to object and thus waived its objections to the brief.
 
 
 16
 In United States v. Brady, 928 F.2d 844, 848 (9th Cir.1991), we vacated the denial of an acceptance of responsibility reduction because the district judge failed to give the defendant notice of its intent to deny the reduction and thereby denied the defendant an adequate opportunity to present relevant information. The district judge also failed to articulate adequately his reasons for denying the reduction. Id. at 848. However, Reed was given notice by the government. Reed had ample opportunity to present a contrary view. See United States v. Palmer, 946 F.2d 97, 100 (9th Cir.1991) (Palmer ) (denial proper when defendant has opportunity to present his arguments). The district judge also gave a sufficient explanation for denying the reduction. Therefore, the denial was proper.
 
 
 17
 Tinkle argues that the district court mistakenly failed to give him a reduction for minimal or minor participant status. U.S.S.G. § 3B1.2. The district court's finding of minor or minimal participant status is "heavily dependent on the facts of the particular case, and should be upheld unless clearly erroneous." United States v. Rexford, 903 F.2d 1280, 1282 (9th Cir.1990) (internal quotations omitted). The district court concluded that Tinkle was not a minor or minimal participant, and found that Tinkle was an equal participant in the venture with Reed. In spite of Tinkle's alleged impairments, there was evidence linking Tinkle to the manufacturing and other activities. Thus, the district court did not clearly err.
 
 
 18
 Tinkle also argues that the district court erred by treating Tinkle's two prior probation violations as unrelated for purposes of calculating Tinkle's criminal history category. Whether cases are related for purposes of determining a defendant's criminal history category is reviewed de novo. United States v. Davis, 922 F.2d 1385, 1388 (9th Cir.1991).
 
 
 19
 Tinkle had two prior convictions for possession of a controlled substance. For his first conviction, he was sentenced to 60 days in jail and three years probation. For his second conviction, he was sentenced to 45 days in jail and three years probation. In August 1988, probation violation warrants were issued in both cases alleging that Tinkle had failed a drug test and also failed to report to his probation officer. The probation revocation proceedings in both cases were consolidated for sentencing, and Tinkle received 16 months' imprisonment in each case to be served concurrently.
 
 
 20
 Tinkle argues that because the probation violations resulted from the same acts, were consolidated for probation revocation sentencing, and resulted in concurrent sentences, the violations should be treated as a single violation. See U.S.S.G. § 4A1.2, comment (n. 3) (cases are related if they occurred on a single occasion or were consolidated for sentencing). However, in probation revocation cases, the court is to apply application note eleven before it applies the related case provision. See Palmer, 946 F.2d at 99.
 
 
 21
 Under application note eleven, the "sentence on the underlying conviction and on the revocation of probation is considered a single conviction." Id. The revocation is merged into the original conviction, and the criminal history score is calculated as if the defendant were originally sentenced to this additional time rather than probation. See id.; accord United States v. Smith, 905 F.2d 1296, 1303 (9th Cir.1990) (Smith ) (treating probation revocation and underlying conviction as one conviction, and holding that "all sentences based on one conviction are to be aggregated"). Therefore, the relevant question is not whether the probation violations are related, but rather whether the underlying convictions are related. Palmer, 946 F.2d at 99; Smith, 905 F.2d at 1303.
 
 
 22
 For example, in Palmer, a burglary conviction served as a predicate for the revocation of the defendant's probation on an earlier forgery conviction. Palmer, 946 F.2d at 98. The probation revocation and the burglary conviction were consolidated for sentencing. Id. at 99. However, we refused to treat the probation revocation and the burglary conviction as related because the probation revocation merged into the earlier forgery conviction, and the forgery conviction was distinct from the burglary conviction. Id. Similarly, in this case, the probation violations merge into the earlier underlying convictions, and Tinkle has failed to show that the underlying convictions are related. Thus, the district court did not err.
 
 
 23
 This result is inconsistent with a recent amendment to the commentary. The commentary now provides that "[w]here a revocation applies to multiple sentences, and such sentences are counted separately ... add the term of imprisonment imposed upon revocation to the sentence that will result in the greatest increase in criminal history points." U.S.S.G. § 4A1.2, comment (n. 11) (Nov. 1991). However, this commentary did not become effective until after Tinkle was sentenced. This amendment adds a new method for calculating sentences and is more than a mere clarification. See United States v. Avila, 905 F.2d 295, 298 (9th Cir.1990) (substantive amendment to commentary is not persuasive evidence of how prior guidelines should be interpreted). Tinkle has failed to argue persuasively why this amendment provides evidence of how the 1990 Guidelines should be interpreted.
 
 
 24
 AFFIRMED.