992 F.2d 1220
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Allan Fuentes SOSA, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jaime Espinoza LEON, aka: Jamie Leon Espinoza, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Miguel Ortiz PEDRAZA, Defendant-Appellant.
 Nos. 92-50050, 92-50061 and 92-50062.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 4, 1993.*
Decided May 4, 1993.
 
 Before SCHROEDER, THOMPSON and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 The three appellants in this case--Allan Fuentes Sosa, Jaime Espinoza Leon, and Miguel Ortiz Pedraza--were convicted of conspiracy to possess with intent to distribute cocaine and possession with intent to distribute cocaine. All three now appeal their convictions challenging mainly (1) the stop of a vehicle occupied by Sosa, Pedraza, and a non-party codefendant; (2) the subsequent pat-down search of Sosa; and (3) the search warrant issued as a result of the improper vehicle stop and search. Leon also challenges a sentence enhancement for possession of a weapon during the commission of a crime. We affirm in all respects.
 
 
 3
 The facts are not complicated or contested. Detectives placed under surveillance for suspected narcotics activity a certain residence in El Monte, California (the "Whitmore" residence). While conducting surveillance, detectives observed a car leave the location. Detectives followed the car as it drove around several freeways, finally exiting and then immediately returning to the freeway and travelling back to the Whitmore residence.
 
 
 4
 On the same day, detectives were engaged in a separate, but similar, episode. Three individuals (who later turned out to be defendants Sosa, Manriquez, and Pedraza) left the residence and toured several streets and freeways in a red truck. Along the way, the vehicle made continuous lane changes without signalling and accelerated and decelerated its speed. The occupants kept a watchful eye behind them. The detectives concluded that the occupants were engaged in counter-surveillance techniques.
 
 
 5
 The truck arrived at another residence where the driver entered the house and then returned to the truck and pulled away. Detectives again followed the truck on several freeways while the truck continued to change lanes and speed. Detectives eventually were unable to keep up with the truck.
 
 
 6
 The following day, surveillance was reestablished at the Whitmore residence. The same truck arrived at the residence that morning. The truck then made a short trip to a supermarket where the occupants got out, walked in the market, then immediately walked out and returned to the Whitmore residence. Again, detectives considered the activities of the occupants to be consistent with counter-surveillance maneuvers.
 
 
 7
 Later that morning, Sosa put two tote bags in the bed of the truck, Manriquez placed a garment bag in the bed of the truck, and Pedraza joined them in the truck. The truck drove onto several interstate highways and was followed by detectives. The detectives noted that the truck changed lanes and speed continuously and the occupants peered out the back. The detectives requested assistance from a local police unit to pull the truck over.
 
 
 8
 Officer Camacho responded to the request. Camacho was unaware of the surveillance and suspected narcotics activity. Camacho observed several traffic violations, including changing lanes without signalling, speeding, and tailgating. Camacho testified that he then pulled the truck over as he would have any other vehicle engaged in a similar driving pattern.
 
 
 9
 Camacho approached the passenger side of the car and noticed that Sosa had a bulge in his waist area. Camacho drew his weapon fearing that Sosa had a weapon of his own. A pat-down search was conducted in which $100,000 and two ounces of cocaine was discovered strapped to Sosa's waist. One of the surveilling detectives helped to execute an arrest of all the vehicles and a search of the truck that turned up a cellular phone.
 
 
 10
 Based upon this arrest, detectives obtained a warrant to search the Whitmore residence. Officers arrived at the residence to execute the warrant and defendant Leon attempted to jump out of a side window with a chrome object in his hand. An officer ordered him not to move, the residence was entered, and a search turned up 121 kilograms of cocaine and a semi-automatic handgun.
 
 
 11
 After arraignment, the defendants moved to suppress the evidence obtained. The court denied all arguments and sustained the use of all evidence. The district court found that there was reasonable suspicion to stop the truck, that the pat-down search of Sosa was justified as a weapons search, and that the search warrant was valid. The district court also ruled that Leon and Pedraza lacked standing to challenge the pat-down search of Sosa. All defendants were convicted. As regards sentencing, Leon challenges a two level increase for use of a dangerous weapon during commission of the offense.
 
 
 12
 I. Was the stop of the truck valid?
 
 
 13
 All three appellants argue that the stop of the truck was invalid because (1) the stop was pretextually based on alleged traffic violations; and (2) even if not pretextual, the officers lacked reasonable suspicion to stop the vehicle. With regard to appellant Leon, the government contends that he lacks standing to challenge the stop of the vehicle. We conclude that the stop was valid and thus do not reach the standing issue.
 
 
 14
 The district court upheld the stop of the car, stating:
 
 
 15
 First of all, with respect to the stop of the pickup truck, probably wasn't probable cause, but I think there was certainly reasonable suspicion with respect to traffic violations. That's abundantly clear. I find that to be the case. And I think there's a difference, you know, if somebody may be speeding, somebody may be making lane changes, somebody may be tailgating, but I think the pattern of evasive driving, testified to by the officers, is something else. And all of these numerous violations piled one on top of the other is adequate cause for a traffic stop.
 
 
 16
 Leon's E.R. at 177.
 
 
 17
 Appellants do not contest the fact that the traffic violations could have given rise to reasonable suspicion sufficient to stop the truck. Instead, appellants contend that the violations were used improperly as a pretext to search for evidence to support the detectives' narcotics conspiracy theory. Leon argues that the case should be remanded because the district court failed to consider the pretext argument. See, e.g., United States v. Gutierrez-Mederos, 965 F.2d 800 (9th Cir.1992) ("To evaluate the validity of appellant's claim, we must review the district court's factual finding regarding the motivation or primary purpose of the arresting officer."), petition for cert. filed, --- U.S.L.W. ---- (U.S. Dec. 9, 1992) (No. 92-6924); United States v. Brewer, 947 F.2d 404, 412 (9th Cir.1991) (district court ordered to address pretext argument on remand).
 
 
 18
 We disagree. As the above statement by the district court demonstrates, the district court determined that the officers' testimony as to the reasons for stopping the truck was credible. We agree with the district court's assessment of the situation. Further, we believe that there was reasonable suspicion to stop the truck even without the traffic violations.
 
 
 19
 "An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." United States v. Cortez, 449 U.S. 411, 417 (1981); see also United States v. Sutton, 794 F.2d 1415, 1426 (9th Cir.1986) ("Founded suspicion exists when an officer is aware of specific articulable facts, together with the rational inferences drawn therefrom, that reasonably warrant suspicion that the person to be detained may have committed or is about to commit a crime."). Courts have come to describe the concept of cause necessary to effectuate a stop as "reasonable suspicion." The Supreme Court recently described reasonable suspicion:
 
 
 20
 Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.
 
 
 21
 Alabama v. White, 496 U.S. 325, 330 (1990). Thus, the "totality of circumstances" or "whole picture" must be taken into account to determine whether reasonable suspicion exists. Id.; see Cortez, 449 U.S. at 417.
 
 
 22
 One factor that can inform a court when looking to the totality of circumstances is the information known to the investigating officer--derived from the interplay of facts specific to the situation and the experience of the officer. Thus, inferences drawn by a trained officer are important to any inquiry of whether reasonable suspicion existed to effectuate a valid stop. Id.; see also United States v. Fouche, 776 F.2d 1398, 1403 (9th Cir.1985), cert. denied, 486 U.S. 1017 (1988).
 
 
 23
 Viewing the whole picture of the present case, it is clear that specific, articulable facts gave rise to a reasonable suspicion that criminal activity was afoot. First, the residence from which the defendants emerged had been under surveillance for suspected narcotics activity. Second, several times during the day of and prior to the arrest the defendants drove vehicles in a suspicious fashion. This included driving to another residence and stopping for only a few minutes, driving on the freeway only to exit and turn around and return to the Whitmore residence, and going to a nearby supermarket only to walk in and out in the same motion. Further, during all of these occurrences detectives observed the occupants of the vehicles continuously looking behind them. Third, detectives observed Sosa, Pedraza, and a third codefendant place several bags in the back of the truck and drive away. As the detectives followed, the truck began to drive erratically on the freeway and the occupants made motions pointing out the detectives.
 
 
 24
 At this point the detectives had observed a pattern of behavior over a period of two days (among people emerging from a residence already under surveillance for narcotics activity) that was consistent with counter-surveillance techniques used by individuals involved in the drug business. See United States v. Hoyos, 892 F.2d 1387, 1393 (9th Cir.1989) (evidence of driving typical of counter-surveillance techniques probative in case to determine higher standard of probable cause), cert. denied, 111 S.Ct. 80 (1990). The detectives based this on their considerable experience as law enforcement officers. As described, this situation seems to come within the definitions of reasonable suspicion enumerated above: specific facts that lead to rational inferences by experienced law enforcement agents that criminal activity is afoot.
 
 
 25
 II. Was the pat-down search of Sosa valid?
 
 
 26
 The district court ruled that the pat-down search of Sosa, based on Officer Camacho's observation that Sosa had a bulge in his waist area, was a legitimate protective pat-down search. Appellant Sosa argues that there was no threat of harm and no reason to conduct a pat-down search in order to issue a traffic citation. Appellant's challenge must fail.
 
 
 27
 In Michigan v. Long, 463 U.S. 1032 (1983), the Court held that pat-down searches at roadside encounters are permissible where an officer believes that the occupant of the vehicle "may gain immediate control of [a] weapon[ ]." Id. at 1049. Further, "[i]f, while conducting a legitimate Terry search ..., the officer ... discover[s] contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances." Id. at 1050.
 
 
 28
 The facts of Long are instructive in determining under what circumstances a protective search may occur. In Long, the suspect was outside the car and in the custody of a second officer when a search of the car occurred. Given these facts, the chances of the suspect in Long obtaining a weapon were clearly less than the probability presented to Officer Camacho. Here, Camacho noticed a conspicuous bulge coming from the waist area of Sosa. The bulge could very well have been a weapon and a quick movement could have placed Camacho in extreme danger. Further, the pat-down search was no more extensive than necessary. The search was thus a valid protective search consistent with Long.
 
 
 29
 III. Was there probable cause to issue a warrant to search the Whitmore residence?
 
 
 30
 The district court ruled that there was probable cause to issue a warrant to search the Whitmore residence. In the alternative, the district court stated that the officers' reliance on the warrant came within the good faith exception.
 
 
 31
 The role of this court is to determine whether the magistrate had a "substantial basis" upon which to find that probable cause existed to search the Whitmore residence. Illinois v. Gates, 462 U.S. 213, 238 (1983). A magistrate's determination of probable cause is reversed only if clearly erroneous. United States v. Bertrand, 926 F.2d 838, 841 (9th Cir.1991). A reviewing court must "show[ ] deference to the issuing magistrate's determination." United States v. Hernandez, 937 F.2d 1490, 1494 (9th Cir.1991); see also United States v. Fannin, 817 F.2d 1379, 1381 (9th Cir.1987).
 
 
 32
 "[P]robable cause is a fluid concept ... not readily, or even usefully, reduced to a neat set of legal rules," and must be determined by looking to the "totality of the circumstances." Gates, 462 U.S. at 232; Fannin, 817 F.2d at 1381. Following this mandate, and properly deferring to the magistrate's determination, it is clear that the issuance of the search warrant was valid.
 
 
 33
 Appellants' argument is that the nexus between the information known to the magistrate and the likelihood that drugs would be found at Whitmore is too remote to support the warrant. However, "[d]irect evidence that contraband or evidence is at a particular location is not essential to establish probable cause to search the location." Bertrand, 926 F.2d at 842 (quoting United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir.1986)). Instead, "[t]he magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit." United States v. Peacock, 761 F.2d 1313, 1315 (9th Cir.), cert. denied, 474 U.S. 847 (1985). Thus, probable cause exists if there is a reasonable belief that the place to be searched contains evidence of criminal activity. Further, as with determinations of reasonable suspicion, inferences drawn from the officers' experience may be considered. Bertrand, 926 F.2d at 842; Fannin, 817 F.2d at 1381 ("[A] magistrate may rely on the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found.").
 
 
 34
 Here, the affidavit upon which the warrant was based detailed not only the observations of the investigating officers and the information known to them, but also explained how their experience in narcotics investigations led them to believe that evidence of drug activity existed at the Whitmore residence. Contrary to appellants' assertions, the nexus between the Whitmore residence and the information known prior to and obtained as a result of the pat-down is quite strong. As evidenced by the surveillance, officers suspected drug activity was being conducted at the Whitmore residence. They saw the red truck parked at the residence the day before the stop of that vehicle. They saw that vehicle arrive at Whitmore and then leave some time later. The officers' experience led them to believe that they were being engaged in counter-surveillance techniques. Finally, and most importantly, the cash and cocaine found on Sosa cemented their suspicions that the appellants were involved in drug activity.
 
 
 35
 This information alone supports a finding of probable cause. When coupled with the deference granted to the magistrate, this information forecloses appellants' challenge to the warrant.
 
 
 36
 IV. Did the district court err by upwardly adjusting Leon's sentence for possession of a firearm during the commission of a drug offense?
 
 
 37
 Appellant Leon's sentence was adjusted upward for possession of a firearm pursuant to Sentencing Guideline § 2D1.1(b)(1). This was based on the observation of an officer at the back of the Whitmore residence who saw a suspect attempt to climb out the back window with a chrome object in his hand. The ensuing search turned up a chrome handgun.
 
 
 38
 Leon argues that there is no evidence that he had dominion and control over the weapon. As support, Leon points to the following facts: (1) the detective did not see who was attempting to climb out of the window; (2) the detective lost sight of the individual until officers entered the house; (3) Leon was not the only person in the house; and (4) the weapon was found under the mattress of the bed--in proximity to, but not under anybody's control at the time it was found.
 
 
 39
 Sentencing Guideline § 2D1.1(b)(1) states that "[i]f a dangerous weapon (including a firearm) was possessed," the sentence should be increased by two levels. The commentary to section 2D1.1 states that the enhancement "reflects the increased danger of violence when drug traffickers possess weapons." There is an exception if "it is clearly improbable that the weapon was connected with the offense." This exception is not at issue here.
 
 
 40
 In United States v. Restrepo, 884 F.2d 1294 (9th Cir.1989), an automatic pistol was discovered hidden between the mattress and box spring of a bed during a search of Restrepo's residence. The search also turned up drugs and drug paraphernalia. Id. at 1295. The court went on to hold that the facts supported a finding that Restrepo possessed the weapon during the commission of the offense. This ruling was based on the fact that the weapon was found in the same room as equipment used for drug distribution. Id.
 
 
 41
 The facts of the present case are analogous to Restrepo. Officers found the weapon in the same room as other evidence of drug activity, including receipts, utility bills, letters, and a traffic ticket all in the names of aliases used by Leon. Thus, the district court did not clearly err by finding that the weapon was possessed during the commission of the drug offense. Further, the presence of the papers in the room indicates that Leon had dominion and control over the room. As such, the district court did not clearly err by finding that Leon also had dominion and control over the gun.
 
 
 42
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3