5 F.3d 542
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Charles Odell McKINNEY, Defendant-Appellant.
 No. 92-30440.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 2, 1993.
Decided Sept. 9, 1993.
 
 Appeal from the United States District Court for the District of Oregon, No. 91-175-MFM; Malcolm F. Marsh, District Judge, Presiding.
 D.Or.
 AFFIRMED.
 Before: BROWNING, SCHROEDER, and HALL, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Charles Odell McKinney appeals his jury conviction for possession with intent to distribute cocaine in violation of 21 U.S.C. Sec. 841(a)(1), possession of a firearm in violation of 18 U.S.C. Sec. 922(g), and use of a firearm during a drug trafficking crime in violation of 18 U.S.C. Sec. 924(c)(1). The district court had jurisdiction pursuant to 18 U.S.C. Sec. 3231. This court has jurisdiction over McKinney's timely appeal pursuant to 28 U.S.C. Sec. 1291. We affirm.
 
 
 3
 * McKinney argues that the district court should have suppressed evidence seized during the search of his residence because the warrant authorizing the search was not supported by probable cause. The warrant was issued based on an affidavit by Officer Hascall that described a series of drug sales by McKinney. Although none of those sales were conducted at McKinney's residence, the affidavit stated that evidence would likely be found there because drug sellers usually keep evidence of their dealings at their own residences. McKinney contends that this generalization cannot establish probable cause to search his residence where there is no particularized evidence that he sold drugs at his home.
 
 
 4
 In order to find probable cause, a magistrate must conclude that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). It is not essential that there be direct evidence that the items sought can be found at that location. United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir.1986). Rather, a magistrate "is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." Id. In drawing these inferences, a magistrate may rely on the conclusions of experienced law enforcement officers. United States v. Fannin, 817 F.2d 1379, 1381-82 (9th Cir.1987); United States v. Crozier, 777 F.2d 1376, 1380 (9th Cir.1985).
 
 
 5
 McKinney's argument has been squarely rejected in the Ninth Circuit. In Fannin, a case with facts very similar to those here, a DEA agent submitted an affidavit requesting a search warrant for the defendant's residence. The affidavit detailed the agent's drug-related negotiations with the defendant and his observation that drug traffickers routinely keep evidence of their crimes where they live. Fannin, 817 F.2d at 1380-81. Even though none of the negotiations took place at the defendant's home, the court upheld the search warrant because the agent's "firsthand knowledge of Fannin's involvement in drug trafficking gave him probable cause to believe that evidence of the crime might be found in Fannin's residence." Id. at 1382.
 
 
 6
 The same reasoning was adopted in Angulo-Lopez. In that case, the court ruled that even though all of the drug trafficking activities listed in the search warrant affidavit occurred away from the defendant's residence, there was probable cause to search there because "[i]n the case of drug dealers, evidence is likely to be found where the dealers live." Angulo-Lopez, 791 F.2d at 1399. See also United States v. Valenzuela, 596 F.2d 824, 828-29 (9th Cir.), cert. denied, 441 U.S. 965 (1979).
 
 
 7
 These cases are dispositive of McKinney's claim. Hascall had firsthand knowledge of McKinney's drug activities, having supervised and monitored an informant as he purchased crack cocaine from McKinney on four separate occasions. Hascall detailed these events in his affidavit and added that, based on his experience and training as a narcotics officer, drug sellers who deal away from their residences usually keep drugs and drug proceeds at home.[1] Under Fannin and Angulo-Lopez, this was sufficient to establish probable cause.[2]
 
 II
 
 8
 McKinney also contends that the statements he made to Hascall during the search of his residence were involuntary and thus improperly admitted at trial. Specifically, he complains that he was questioned under coercive circumstances, psychologically manipulated, and improperly induced into giving a statement. We find McKinney's claims unpersuasive.
 
 
 9
 Before a criminal defendant's inculpatory statements can be admitted into evidence, the government must prove by a preponderance of the evidence that they were made voluntarily. Lego v. Twomey, 404 U.S. 477, 489 (1972). The test is whether, "considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." United States v. Leon Guerrero, 847 F.2d 1363, 1366 (9th Cir.1988).
 
 
 10
 The circumstances surrounding the questioning were not impermissibly coercive. McKinney was advised of his Miranda rights prior to his conversation with Hascall. The interview, which lasted only 30 minutes, took place in a quiet bathroom away from the other officers, thus mitigating any intimidating effect that a "police-dominated setting" might otherwise have created. Furthermore, McKinney does not claim that Hascall was abusive during the interview; although McKinney was handcuffed, he was not physically threatened in any way. These facts do not describe a situation that is unduly coercive.
 
 
 11
 We also reject McKinney's contention that the police psychologically manipulated him by placing him and his mistress near his "presumably enraged wife." There is no evidence that McKinney's wife was in fact enraged or that McKinney was disturbed by that prospect. Nor does McKinney explain why such a reaction from his wife would render him more likely to admit to dealing in narcotics.
 
 
 12
 Finally, we do not find that McKinney's confession was improperly induced. Not every promise made by law enforcement personnel will invalidate a subsequent confession. Rather, a promise must be sufficiently compelling to overbear the suspect's will in light of all attendant circumstances. Hutto v. Ross, 429 U.S. 28, 30 (1976); Leon Guerrero, 847 F.2d at 1366. Hascall made no promises that he or anyone else would help McKinney in exchange for his statements. He never indicated that he would help McKinney cut a deal, but merely suggested that McKinney attempt to do so on his own. Nor did Hascall describe any tangible benefits that McKinney might gain by cooperating. In short, Hascall made no promises, compelling or otherwise. The totality of the circumstances, then, demonstrates that McKinney was neither coerced nor induced into making inculpatory statements, but rather spoke of his own will.
 
 
 13
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 McKinney does not argue that Hascall was unqualified to give such an opinion, or that his generalization was inaccurate
 
 
 [2]
 Since we find that the search warrant was supported by probable cause, we need not address the government's argument that the evidence obtained in the search was properly admitted because the officers executing the warrant acted in good faith