12 F.3d 1109
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Melanie CROWELL, Defendant-Appellant.
 No. 92-10524.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 30, 1993.
Decided Nov. 30, 1993.
 
 1
 Before: D.W. NELSON and NORRIS, Circuit Judges, and BELLONI, Senior District Judge*
 
 
 2
 MEMORANDUM**
 
 
 3
 Appellant Melanie Crowell appeals the district court's denial of her pretrial motions. After the district court denied Crowell's motion to suppress the fruits of a search warrant and motion to suppress statements, Crowell entered a conditional guilty plea to one count of possession with intent to distribute a quantity of crystal methamphetamine in violation of 21 U.S.C. Sec. 841(a)(1). Crowell contends that the district court improperly relied on information secured through a wiretap order; that the search warrant was not supported by probable cause; that the search of her purse exceeded the scope of the search warrant; that the officers executing the search warrant failed to properly knock and announce their presence; and that the court should have suppressed her post-Miranda statements. We affirm the decision of the district court.
 
 DISCUSSION
 1. The Wiretap Order
 
 4
 Crowell contends that the district court erred by relying on evidence obtained through an improper wiretap order. Crowell contends that all information derived through the wiretap should be excluded from the affidavit in support of the search warrant. Crowell argues that when the wiretap information is excluded the search warrant lacks probable cause.
 
 
 5
 We find that the issue of the adequacy of the wiretap order is not ripe for review. The district court did not rule on Crowell's wiretap motion, and did not consider information derived through the wiretap in determining the adequacy of the search warrant. Likewise, we will not rely on information obtained through the wiretap in considering the issue of probable cause.
 
 2. Probable Cause
 
 6
 Crowell contends that the affidavit in support of the search warrant for 217 Prospect Street does not establish probable cause to search that location. Crowell concedes that the affidavit of Agent Harmon contains sufficient information to indicate that Darwin Kaneaiakala was involved in narcotics trafficking and that he had some connection with the apartment at 217 Prospect Street. However, Crowell argues that the affidavit does not support the conclusion that the apartment was Kaneaiakala's residence, or that it was associated in any way with drug trafficking.
 
 
 7
 "Probable cause exists when, considering the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Ocampo, 937 F.2d 485, 490 (9th Cir.1991) (internal quotations omitted). The court need not determine that the evidence sought is actually on the premises to be searched, or even that the evidence is more likely than not to be found there. United States v. Fannin, 817 F.2d 1379, 1382 (9th Cir.1987). The court need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit. Id.
 
 
 8
 It is well established that " '[i]n the case of drug dealers, evidence is likely to be found where the dealers live.' " Id. (quoting United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir.1986)). The affidavit contains several facts which support the district court's finding that the apartment at 217 Prospect Street was Kaneaiakala's residence. A drug dealer who worked with Kaneaiakala gave an informant the telephone number for the apartment, describing it as Kaneaiakala's home telephone number. An undercover agent subsequently telephoned Kaneaiakala at that number on four occasions. An undercover agent also drove with Kaneaiakala to the apartment complex, where Kaneaiakala used a garage door opener to gain entry to the secured parking lot, parked in an assigned slot, and stated that he had to go inside and get something from his apartment. Agent Harmon later ascertained that the entry phone register for 217 Prospect Street listed a number for D. Kaneaiakala.
 
 
 9
 Crowell acknowledges that the affidavit shows some connection between Kaneaiakala and 217 Prospect Street, but argues that the court disregarded information in the affidavit which suggests that Kaneaiakala had another residence. Crowell mistakenly assumes that the affidavit is invalid unless it establishes that the place to be searched is Kaneaiakala's exclusive residence. We have previously held that the residency rule applies in the case of a residence associated with an assistant as well as a ringleader. See Angulo-Lopez, 791 F.2d at 1399. The reason given was that, in the case of drug dealing, "a fair probability exists that drugs will be present at the assistants' residence as well as the ringleader's." Id. If the residency presumption aplies in the case of locations associated with different members of a drug ring, we see no reason why it should not apply to different residences associated with the same suspected dealer. The fact that there are multiple residences does not necessarily mean that there is any less of a "fair probability" that the relevant evidence would be found at any one of them, for the rationale behind the presumption is that drug dealing is the type of crime committed out of covert private locations.
 
 
 10
 In this case, the affidavit indicates that Kaneaiakala and his fellow drug trafficker, Kitagawa, were associated with more than one address. Under these circumstances, it was reasonable for the court to conclude that the apartment at 217 Prospect Street was Kaneaiakala's residence, although not necessarily his only residence, and that records relating to drug distribution were likely to be found there. We conclude that the affidavit in support of the search warrant established a sufficient nexus between the location to be searched and the evidence sought.
 
 3. The Scope of the Search Warrant
 
 11
 During the execution of the search warrant, Crowell's purse was searched and 24 grams of crystal methamphetamine were discovered within a small change purse. Crowell contends that the search of her purse and items inside it exceeded the scope of the search warrant because the warrant did not specifically mention Crowell or her possessions. She argues that the facts in this case are analogous to the facts in United States v. Robertson, 833 F.2d 777 (9th Cir.1987), which involved the search of a backpack carried by a visitor who was leaving a house. See id. at 783-85.
 
 
 12
 However, the facts in this case are distinguishable from those in Robertson. First, there is evidence that Crowell was an occupant rather than a visitor to the premises. In addition, in contrast to the backpack in the Robertson case which was in the physical possession of a person detained outside the premises, the purse was not in Crowell's physical possession at the time of the search. If a warrant sufficiently describes the premises to be searched it is appropriate to search all personal effects on the premises which might contain the items described in the warrant. United States v. Gomez-Soto, 723 F.2d 649, 654 (9th Cir.1984).
 
 
 13
 In this case, the search warrant authorized the search of apartment F-4 in the 217 Prospect Street complex for records relating to the distribution of controlled substances, relating to income and expenditures of money from controlled substances, and relating to the identity of persons in residence, occupancy, control or ownership of the premises. At the evidentiary hearing on Crowell's motion to suppress, agents testified that they had reason to believe that Crowell was an occupant rather than a mere visitor to the apartment. The agents also testified that drug dealers commonly maintain records of their transactions and associates, but that such records are not necessarily kept in a formal manner and may be hidden in almost any location. The agents testified that they would anticipate finding records such as the telephone numbers of drug associates in a small container like Crowell's change purse.
 
 
 14
 Based on the evidence in the record, the agents could reasonably conclude that Crowell's purse and the change purse within it might contain documents sought by the search warrant. Therefore, the district court did not err in holding that the search of Crowell's purse and change purse were within the scope of the search warrant.[1]
 
 4. The Knock and Announce Requirement
 
 15
 Crowell contends that the agents executing the search warrant did not satisfy the knock and announce requirement of 18 U.S.C. Sec. 3109 when they entered the apartment at 217 Prospect Street. The district court found that Agent Harmon knocked three times, said words to the effect of "federal agents with a search warrant," and forced the door open after waiting approximately five seconds. The court accepted Agent Harmon's testimony that he believed that there was danger to law enforcement officers and occupants of the premises if there was a long delay between the knock and entry. The court concluded that exigent circumstances justified the very brief pause between the agent's knock and announcement and the use of force to enter the apartment.
 
 
 16
 Section 3109 of Title 18, United States Code states:
 
 
 17
 The officer may break open any outer or inner door or window of a house or any part of a house, or anything therein, to execute a search warrant if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.
 
 
 18
 Implicit in this provision is the requirement that the officer wait a reasonable period of time after the announcement to give the occupants a chance to grant or refuse admittance. The amount of time that is reasonable depends upon the circumstances of each case. United States v. McConney, 728 F.2d 1195, 1206 (9th Cir.) (en banc ), cert. denied, 469 U.S. 824 (1984).
 
 
 19
 Compliance with section 3109 is excused when exigent circumstances make such procedures imprudent, as when the officer executing a search warrant holds a "reasonable belief that announcement might place him or his associates in physical peril." United States v. Ramirez, 770 F.2d 1458, 1460 (9th Cir.1985) (internal quotations omitted). Exigent circumstances may also exist where there is a reasonable fear for the safety of bystanders or occupants of the premises to be searched. United States v. Turner, 926 F.2d 883, 886 (9th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 103, 116 L.Ed.2d 73 (1991).
 
 
 20
 The United States contends that exigent circumstances were adequately demonstrated by Agent Harmon's testimony that: 1) he believed that Kaneaiakala, Crowell, and her infant child were likely to be present at the apartment; 2) he had information that Kaneaiakala was often armed and that he had shown a propensity to use violence; and 3) he believed that the layout of the apartment could increase the danger to agents if entry was delayed. Crowell contends that the district court should not have given credibility to this testimony, arguing that if the agents really feared a violent response they would have entered the apartment as quickly as possible, without announcing their presence at all.
 
 
 21
 However, the evidence does not compel a finding that this was the only reasonable course. The agents reasonably could have believed that it was safer to announce themselves as federal agents than to let the occupants assume that they might be unlawful intruders. The evidence in the record supports the district court's finding that the agents executing the search warrant reasonably believed that further delay in entering the premises could have endangered agents or occupants of the apartment. Therefore, the district court did not err in finding that exigent circumstances excused further compliance with section 3109.
 
 5. Motion to Suppress Statements
 
 22
 Crowell contends that the district court erred by failing to suppress statements she made while in custody. The United States contends that this issue is not properly before this court because Crowell's plea agreement did not reserve the right to appeal the ruling on her motion to suppress statements.
 
 
 23
 Rule 11(a)(2) of the Federal Rules of Criminal Procedure provides that a defendant may enter a conditional plea of guilty "reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion." A defendant's failure to make a written reservation as to a specific motion deprives the reviewing court of jurisdiction to review the omitted issue. United States v. Echegoyen, 799 F.2d 1271, 1275-76 (9th Cir.1986).
 
 
 24
 Paragraph 4 of Crowell's plea agreement reserves the right to appeal "this Court's denial of the Defendant's motion to suppress the fruits of a search warrant executed on November 14, 1991." The plea agreement does not mention Crowell's motion to suppress statements, which was filed separately from the motion to suppress the fruits of the search warrant. Accordingly, Crowell did not reserve the right to appeal the denial of her motion to suppress statements, and this court does not have jurisdiction to review the issue.
 
 CONCLUSION
 
 25
 The decision of the district court is affirmed in all respects.
 
 
 26
 AFFIRMED.
 
 
 
 *
 Honorable Robert C. Belloni, Senior District Judge for the District of Oregon, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 In light of this holding it is unnecessary to reach the United States' contention that the search falls within the good faith exception set out in United States v. Leon, 468 U.S. 897 (1984)